The State of Ohio, Appellee, *v.* Durr, Appellant.

[Cite as State *v.* Durr (1991), 58 Ohio St. 3d 86.]

(No. 90-291—Submitted November 20, 1990—Decided March 20, 1991.)

*Stephanie J. Tubbs Jones,* prosecuting attorney, and *Carmen M. Marino,* for appellee.

*David L. Doughten* and *Michael C. Hennenberg,* for appellant.

HOLMES, J. In his fourteen prop-

ositions of law, the defendant-appellant asserts various errors by the trial and appellate courts. This court has previously decided many of these legal questions, and they will therefore be disposed of accordingly. *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 520 N.E. 2d 568, syllabus.

After thoroughly reviewing each of appellant's propositions of law, we find none that has merit, and for the reasons stated below we uphold the appellant's convictions and sentence of death.

## A

As his first proposition of law, the appellant argues that the trial court unreasonably and excessively restricted his questioning during the voir dire.

This court has long held that absent a clear abuse of discretion, no prejudicial error can be assigned to the examination of veniremen. *State* v. *Ellis* (1918), 98 Ohio St. 21, 120 N.E. 218, paragraph one of the syllabus; *State* v. *Beuke* (1988), 38 Ohio St. 3d 29, 39, 526 N.E. 2d 274, 285, certiorari denied (1989), 489 U.S. 1071.

Although R.C. 2945.27 affords the prosecution and defense the opportunity to conduct a reasonable examination of prospective jurors, *State* v. *Anderson* (1972), 30 Ohio St. 2d 66, 59 O.O. 2d 85, 282 N.E. 2d 568, the trial court reserves the right and responsibility to control the proceedings of a criminal trial pursuant to R.C. 2945.03, and must limit the trial to relevant and material matters with a view toward the expeditious and effective ascertainment of truth. *State* v. *Bridgeman* (1977), 51 Ohio App. 2d 105, 109-110, 5 O.O. 3d 275, 277, 366 N.E. 2d 1378, 1383.

After reviewing the entire voir dire in this case, we find that by limiting defense counsel's statements, the trial court was attempting to prohibit counsel from lecturing or making legal arguments to the venire panel. The statements so restricted concerned the nature of circumstantial evidence, a juror's perception of the legal system, the function of the coroner's office, the nature of cross-examination, and the standard for judging witness credibility. Since such statements were overly broad and outside the scope of voir dire, we conclude that the trial court by prohibiting them did not abuse its discretion.

The appellant further argues that the prejudice he suffered from the trial court's restrictions during voir dire is evidenced by the impaneling of the jury after only four hours. We know of no law in this state, nor do we wish to create new law today, that establishes a minimum duration for a voir dire. Since we conclude that the trial court in the instant case allowed a reasonable examination of prospective jurors by defense counsel, we decline to accept appellant's argument. Accordingly, we overrule appellant's first proposition of law.

## B

In his second proposition of law, the appellant argues he was prejudiced since the trial court denied defense counsel access to the record to proffer objections, reasons for the objections, and matters that occurred off the record.

App. R. 9(A) requires that "[i]n all capital cases the trial proceedings shall include a written transcript of the record made during the trial by stenographic means," and Crim. R. 22 requires the recording of proceedings in all serious offense cases. However, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the

party is affected * * *." Ohio Rule of Evidence 103(A).

After reviewing appellant's claims in the context of the record, we conclude that the trial court, by restricting the record, neither affected matters vital to appellate review nor affected appellant's substantial rights. Moreover, except for appellant's allegations regarding voir dire, no substantive proffer was made by appellant pursuant to App. R. 9(C) or 9(E) or otherwise to reconstruct what was said or to establish its importance. As a result, appellant waives any such error. *State* v. *Brewer* (1990), 48 Ohio St. 3d 50, 61, 549 N.E. 2d 491, 502; *State* v. *Tyler* (1990), 50 Ohio St. 3d 24, 41-42, 553 N.E. 2d 576, 596; *United States* v. *Gallo* (C.A.6, 1985), 763 F. 2d 1504, 1529-1532, certiorari denied (1986), 475 U.S. 1017.

Since appellant in the instant case has not complied with the above procedures, and has failed to show his substantial rights were affected, we cannot conclude that appellant was denied a fair trial. Accordingly, appellant's second proposition of law is not well-taken.

### C

In his third proposition of law, appellant alleges that the trial court erred by instructing the jury that a sentencing phase would follow the guilt-determining phase of the trial. According to the appellant, such instruction presupposed guilt, undercut the presumption of innocence, and deprived him of a fair trial.

After a thorough and searching review of the record, we decline to accept appellant's claim. Throughout the entire trial, the court admonished and explained to the jurors that guilt is not to be presupposed merely because they were participating in a bifurcated, capital murder case. Moreover, there

is no indication from any prospective juror questioned during voir dire that he or she presupposed guilt. Accordingly, appellant's third proposition of law is not well-taken.

### D

In his fourth proposition of law the appellant claims the trial court erred by dismissing for cause a prospective juror who claimed that the trial experience would upset her.

In *Wainwright* v. *Witt* (1985), 469 U.S. 412, the United States Supreme Court established the standard for the removal of prospective jurors as "* * * whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* at 424, quoting *Adams* v. *Texas* (1980), 448 U.S. 38, 45. This court adopted and applied the *Witt* standard in *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E. 2d 984, at paragraph three of the syllabus, vacated on other grounds (1985), 474 U.S. 1002.

The venireman in question stated that she could not sit in judgment of others in a criminal case and that she would have difficulty being fair to both sides in the trial.

After seeing and hearing the prospective juror, the trial judge concluded that she would be unable to faithfully and impartially apply the law. We must therefore defer to this decision and reject appellant's fourth proposition of law. *State* v. *Beuke, supra.*

### E

As his fifth proposition of law, the appellant claims the trial court erred by denying defense counsel's request to voir dire the jurors after newspapers were found in the jury room. The newspapers, which were immediately confiscated by the bailiff,

contained an article which mentioned the appellant's prior convictions.

The voir dire conducted by the court revealed that none of the jurors had read the article. In addition, all of the jurors acknowledged that nothing except the evidence adduced at trial should influence their decision. Of the alternate jurors voir dired, only one had read the article. Since that alternate juror never served on the jury or deliberated, the effect of the article on that juror is moot.

Unless an appellant demonstrates otherwise, we should assume that the members of the jury followed their oaths and deliberated only upon the evidence adduced at trial. See *State* v. *Zuern* (1987), 32 Ohio St. 3d 56, 60, 512 N.E. 2d 585, 590, certiorari denied (1988), 484 U.S. 1047.

In this case, the jurors, in response to specific queries, affirmed their willingness and ability to decide the case fairly and impartially. Since appellant has failed to show otherwise, we reject appellant's fifth proposition of law.

F

As proposition of law number six, the appellant claims that the trial court improperly admitted hearsay testimony. According to the appellant, he was prejudiced by the hearsay as it enhanced the credibility of the state's key witness, Deborah Mullins. During the state's direct examination of Margaret Hale, Deborah Mullins's mother, the following testimony was recorded:

"Q. At the time that you talked with your daughter, what was the subject matter of that?

"MR. MILANO: Same objection.

"THE COURT: Overruled.

"A. That Darryl Durr trashed Angel."

Evid. R. 801(C) defines "hearsay" as "* * * a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Not only must the statement have been made by someone other than the testifying witness, and be repeated by the witness on the stand, but the statement repeated must derive its primary value by showing the truth of the matter asserted. *Potter* v. *Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E. 2d 140; *Digital & Analog Design Corp.* v. *North Supply Co.* (1989), 44 Ohio St. 3d 36, 42, 540 N.E. 2d 1358, 1364.

When viewed in the context of the record, Mrs. Mullins's statement was not offered to prove that Darryl Durr murdered Angel, but only to prove her recollection of the events surrounding Angel's disappearance. As such we conclude that this was an entirely proper use of relevant testimony and reject appellant's sixth proposition of law.

G

In proposition number seven, the appellant claims he was prejudiced in both the guilt-determination and penalty phases of the trial by the cumulative and repetitive admission of gruesome photographs. The two pictures in issue depict the body as it was found three months after the murder occurred. The first is a closeup photograph of the victim at Brookside Park. The body is covered with a blanket and the victim's head is exposed as well as a portion of her sweater. The second photograph shows the victim's mostly unclothed decomposed body on a cart at the coroner's office. The victim's sweater is pushed up over her breasts and the blanket is down around her feet.

In *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 15 OBR 379, 473 N.E. 2d 768, paragraph seven of the syllabus, we held:

"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."

As we stated in *State* v. *Morales* (1987), 32 Ohio St. 3d 252, 258, 513 N.E. 2d 267, 274, certiorari denied (1988), 484 U.S. 1047, "the emphasis that a trial judge must apply in meeting an Evid. R. 403 objection has changed in capital cases. To be admissible in a capital case, the probative value of each photograph must outweigh the danger of prejudice to the defendant and, additionally, not be repetitive or cumulative in nature. Contrary to the Evid. R. 403 standard, where the probative value must be minimal and the prejudice great before the evidence may be excluded, pursuant to *Maurer, supra,* if the probative value does not, in a simple balancing of the relative values, outweigh the danger of prejudice to the defendant, the evidence must be excluded."

In reviewing the two photographs in the instant case, we conclude that although they are shocking, their probative value is not outweighed by the danger of unfair prejudice. The photographs corroborate the deputy coroner's testimony regarding the body's advanced state of decomposition, the location of the body, and the identifying articles found on the body. Moreover, the photographs are neither cumulative nor repetitive. Each photograph illustrates testimony of state witnesses concerning the crime scene or elements of the crime charged. See *State* v. *DePew* (1988), 38

Ohio St. 3d 275, 280-282, 528 N.E. 2d 542, 550, certiorari denied (1989), 489 U.S. 1042.

Since the probative value of the photographs outweighed the danger of unfair prejudice to the appellant, and since the photographs are neither cumulative nor repetitive, we conclude that their admission into evidence was not an abuse of discretion and reject appellant's seventh proposition of law.

### H

In his eighth and ninth propositions of law, the appellant contends that since the state failed to adduce legally sufficient evidence to sustain his rape and aggravated robbery charges, his convictions on these counts are unconstitutional. We disagree.

### 1

First, appellant claims that the state failed to present proof beyond a reasonable doubt that the appellant at any time raped Angel Vincent. He argues that the circumstantial evidence of Angel's partially naked body is insufficient to sustain the charge of rape and the capital specification that the offense occurred in the commission of a rape.

It is true that the trial court convicted appellant on circumstantial evidence. "But direct evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." *Michalic* v. *Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330, citing *Rogers* v. *Missouri Pacific RR. Co.* (1957), 352 U.S. 500, 508, fn. 17. Murder convictions and death sentences can rest solely on circumstantial evidence. *State* v. *Apanovitch* (1987), 33 Ohio St. 3d 19, 514 N.E. 2d 394; *State* v. *Nicely* (1988), 39 Ohio St. 3d 147, 151, 529 N.E. 2d 1236, 1239.

However, "* * * once the jury has reached its decision, an appellate court, in a case where circumstantial evidence is relied upon, will reverse only where the evidence is insufficient as a matter of law to enable the jury to exclude a reasonable hypothesis of innocence." *State* v. *Graven* (1978), 54 Ohio St. 2d 114, 119, 8 O.O. 3d 113, 116, 374 N.E. 2d 1370, 1374.

In this case, the prosecution presented highly probative circumstantial evidence. Except for a pair of tennis shoes, the victim's body was found nude from the waist down. In addition, Deborah Mullins testified that when she saw Angel tied up in the back of appellant's car, appellant informed Deborah that he was going to kill Angel because she would tell. Based upon these facts, we believe that there was sufficient probative evidence from which a rational trier of fact could have found the appellant guilty of rape beyond a reasonable doubt.

2

Appellant also alleges that his conviction for aggravated robbery and the corresponding capital murder specification pursuant to R.C. 2929.04(A)(7) is constitutionally insufficient. Specifically, appellant argues that the state failed to present evidence that the murder occurred while the appellant was attempting to commit, committing, or fleeing immediately after a theft offense. R.C. 2911.01.

At the time Angel Vincent disappeared she was wearing a jeans jacket, black acid-washed jeans, jewelry and glasses. After she was murdered, appellant possessed her jacket, jeans, jewelry and glasses. This circumstantial evidence and the inferences to be drawn from the removal of these items was sufficient for the jury to exclude any reasonable theory of innocence and to convict the appellant of ag-

gravated robbery and the corresponding capital murder specification. As a result, we conclude that appellant stands convicted on constitutionally adequate grounds.

Accordingly, we reject appellant's eighth and ninth propositions of law.

I

As proposition of law number ten, the appellant alleges that both the trial court and the state improperly instructed the jury that its decision in the penalty phase was merely a recommendation. According to the appellant, these instructions led the jury "to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, 328-329.

We have addressed this issue previously and have held that:

"*Caldwell* * * * is inapplicable where the statements made to the jury during the mitigation phase of a capital trial were accurate statements of the law and were not made to induce reliance on the appellate process." *State* v. *Rogers* (1986), 28 Ohio St. 3d 427, 28 OBR 480, 504 N.E. 2d 52, paragraph one of the syllabus, reversed and remanded on other grounds (1987), 32 Ohio St. 3d 70, 512 N.E. 2d 581. See, also, *State* v. *Johnson* (1989), 46 Ohio St. 3d 96, 545 N.E. 2d 636, certiorari denied (1990), 494 U.S. ___, 108 L. Ed. 2d 639, 110 S. Ct. 1504, and *State* v. *Williams* (1988), 38 Ohio St. 3d 346, 528 N.E. 2d 910, certiorari denied (1989), 489 U.S. 1040.

After reviewing the alleged improper statements in this case, we conclude that, although it is preferable that "no reference be made to the jury regarding the finality of their decision," *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 202, 15 OBR 311, 344, 473 N.E. 2d 264, 299; *State* v. *Rogers,*

94

*supra,* 28 Ohio St. 3d at 433, 28 OBR at 485, 504 N.E. 2d at 57; *State* v. *Williams, supra,* 23 Ohio St. 3d at 22, 23 OBR at 19, 490 N.E. 2d at 912; *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 144, 22 OBR 203, 220, 489 N.E. 2d 795, 813, certiorari denied (1986), 479 U.S. 871; the state's and court's comments in this case remained within the constitutional boundaries set by *Caldwell* v. *Mississippi, supra; State* v. *Rogers, supra,* at 434, 28 OBR at 486, 504 N.E. 2d at 58; *State* v. *Jenkins, supra,* at 202, 15 OBR at 344, 473 N.E. 2d at 298-299. Therefore, we reject appellant's tenth proposition of law.

### J

Appellant next alleges that he was deprived of a fair and impartial trial due to the prosecutor's misconduct. He claims that the prosecutor commented on the unsworn nature of appellant's statement, spoke of societal interest in the outcome, referred to nonstatutory aggravating factors, and undercut defense counsel's credibility with the jury.

At the outset we observe that "the effect of counsel's misconduct 'must be considered in the light of the whole case.'" *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 266, 15 OBR 379, 402, 473 N.E. 2d 768, 792-793, certiorari denied (1985), 472 U.S. 1012, quoting *Mikula* v. *Balogh* (1965), 9 Ohio App. 2d 250, 258, 38 O.O. 2d 311, 315, 224 N.E. 2d 148, 155, and "the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *Maurer, supra;* accord *State* v. *Papp* (1978), 64 Ohio App. 2d 203, 211, 18 O.O. 3d 157, 162, 412 N.E. 2d 401, 407; *State* v. *DeNicola* (1955), 163 Ohio St. 140, 148, 56 O.O. 185, 189, 126 N.E. 2d 62, 66; *Scott* v. *State* (1923), 107 Ohio St. 475, 141 N.E. 19. In reference to appellant's

unsworn statement, the prosecutor made the following statements:

"[MR. MARINO:] This man has taken the stand and talked to you in an unsworn statement never dening [*sic*] that he killed that girl, never apologizing that he killed that girl, never explaining to you why he did these things.

"This is·his time. He could have said anything from that witness stand and a man, I think with a little more courage than an aunt [*sic*], would have done more than send women to the stand on his behalf and then take the stand and try to create reasonable doubt in your mind to intimidate you.

"* * *

"The defendant's lack of prior criminal convictions. Will he take the stand with a aworn [*sic*] statement? Unfortunately, I don't know how that applies to this case.

"MR. MILANO [defense counsel]: Judge, we have an objection to that.

"THE COURT: Sustained.

"MR. MILANO: May we request that you instruct the jury to disregard this line, please?

"THE COURT: The jury is being instructed to disregard this line.

"MR. MARINO: Well, I'm looking to return to this line. The defense counsel did talk to you about it. He did mention it.

"If he didn't want me to mention it to you then he shouldn't have talked about it.

"MR. MILANO: Objection.

"THE COURT: Sustained.

"MR. MILANO: And ask the jury to disregard it. It's improper.

"THE COURT: The jury will disregard that and counsel will proceed."

In the penalty phase of a capital trial, the prosecution may comment that the defendant's statement has not been made under oath or affirmation.

However, in so commenting, the prosecution must carefully tailor its remarks so as only to remind the jury that the defendant's statement, in contrast to the testimony of all other witnesses, was not made under oath. *State* v. *DePew* (1988), 38 Ohio St. 3d 275, 528 N.E. 2d 542, paragraph two of the syllabus, certiorari denied (1989), 489 U.S. 1042.

In this case, the prosecutor's comments were adequately tailored to inform the jury that the appellant's statements were made absent oath or affirmation. As such they did not exceed the legal standard established by *State* v. *DePew, supra.*

However, the prosecutor's second statement does violate the *DePew* standard as it improperly comments on both the appellant's unsworn statement and the appellant's prior convictions. In the third paragraph of the syllabus of *State* v. *DePew,* this court held:

"The prosecutor, in the penalty stage of a capital trial, may rebut false or incomplete statements regarding the defendant's criminal record. This right is limited, however, to those instances where the defense offers a specific assertion, by a mitigation witness or by the defendant, that misrepresents the defendant's prior criminal history."

The record in this case is devoid of any reference by appellant or any mitigation witness that the appellant was free of criminal convictions. Viewing these comments in light of the whole case, however, we do not find that the appellant was denied a fair trial, especially since the trial court promptly admonished the jury to disregard the state's improper remarks. See *id.* at 284, 528 N.E. 2d at 553.

Appellant further contends that the prosecutor improperly argued that the jury was socially obligated to sentence appellant to death. After reviewing the statements in issue, we disagree.

Even if we were to interpret the prosecutor's remarks as appellant argues, we "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly* v. *DeChristoforo* (1974), 416 U.S. 637, 647.

Next, appellant argues that the prosecutor improperly referred to appellant's lack of remorse, his failure to deny or explain the offense and the impact of the victim's death upon her mother. Assuming the prosecutor committed misconduct, these statements were not objected to, and after reviewing the record, we believe that these remarks are too insignificant to rise to the level of plain error.

Appellant also alleges the prosecutor improperly mentioned each factor in R.C. 2929.04(B). "R.C. 2929.04(B) and (C) deal with mitigation and were designed to enable *the defendant* to raise issues in mitigation and to facilitate his presentation thereof. If the defendant chooses to refrain from raising some or all of the factors available to him, those factors not raised may not be referred to or commented upon by the trial court or the prosecution." (Emphasis *sic.*) *State* v. *DePew, supra,* at 289, 528 N.E. 2d at 557. Comments are appropriate "only with regard to those factors actually offered in mitigation by the defendant." *Id.* Although the prosecutor's comments in this case did violate *DePew,* we find that appellant was not prejudiced thereby.

As his final argument concerning misconduct by the prosecutor, ap-

pellant contends that the prosecutor improperly communicated his personal belief in the appellant's guilt to the jury and made unfavorable remarks about defense counsel. According to the appellant, these comments concerned matters outside the record and therefore led the jury to convict him for reasons not related to the evidence adduced at trial.

"* * * Since the penalty phase of a capital trial 'is a moral inquiry into the culpability of the defendant * * *,' *California* v. *Brown* (1987), 479 U.S. 538, 545 (O'Connor, J., concurring), it is difficult for prosecutors to argue vigorously for the death penalty without making what might arguably be statements of personal opinion. In any case, we have held that a prosecutor may state his opinion if it is based on the evidence presented at trial. *State* v. *Stephens* (1970), 24 Ohio St. 2d 76, 83, 53 O.O. 2d 182, 186, 263 N.E. 2d 773, 777." *State* v. *Tyler* (1990), 50 Ohio St. 3d 24, 41, 553 N.E. 2d 576, 595.

In this case, the prosecutor stated his opinion after summarizing the evidence that described the circumstances surrounding Angel Vincent's death. Viewed in the proper perspective, the prosecutor's comments do not constitute error. Therefore, appellant's eleventh proposition of law is overruled.

## K

As proposition of law twelve, appellant claims that his defense counsel failed in several respects to render effective assistance. Specifically, appellant claims he was prejudiced by his counsel's failure to object to improper questioning or instructions placed to the jury; counsel's elicitation of testimony of other bad acts by the appellant on cross-examination of Deborah Mullins; counsel's failure to preserve a tape-recorded telephone conversation for appellate review; and counsel's enumeration of all the mitigating circumstances to the jury as evidence of counsel's ineffectiveness.

Allegations of ineffective assistance of counsel are subject to a two-prong test. The defendant must show that, in light of all the circumstances, counsel's representation was professionally unreasonable. *Strickland* v. *Washington* (1984), 466 U.S. 668, 690-691. In addition, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

After reviewing all the errors as alleged by the appellant, we find no merit in any of the claims of ineffectiveness, and conclude that the defendant was afforded a fair trial in which his counsel protected all of his constitutional rights.

Although appellant's trial counsel failed for the most part to object to the prosecution's and the court's use of the term "recommendation," we have determined that based upon the facts in this case the use of the term "recommendation" was not error. Therefore, counsel could not have been ineffective in failing to object.

Moreover, after reviewing the cross-examination testimony of Deborah Mullins, we conclude that her comments regarding appellant's violent behavior were elicited to demonstrate her bias and prejudice. As such, counsel was not ineffective in eliciting such testimony.

Next, appellant argues that his attorneys were ineffective by failing to preserve an alleged tape-recorded conversation between Deborah Mullins and the appellant. The trial court determined that the tape was irrelevant to the issues raised at trial. We

agree, based on the attorneys' descriptions of the tape during argument on the motion to admit it, and hence find no basis for a claim of ineffective assistance.

Appellant also claims he was prejudiced after his counsel referred to a mitigating factor that had not been addressed by the prosecution. However, after reviewing the record, we conclude that in reciting the mitigating factors to the jury, defense counsel was attempting to emphasize and explain the weighing process that the jury must engage in during the sentencing phase of the trial. Such an argument does not render counsel ineffective.

In sum, we believe that appellant's counsel's argument was a reasonable exercise of professional judgment. Therefore, we find no merit in any of appellant's claims of ineffective assistance of counsel. Appellant's twelfth proposition of law is denied.

## L

In his thirteenth proposition of law, appellant attacks the constitutionality of the requirement that the defendant prove the existence of mitigating factors by a preponderance of evidence. However, this case does not present this issue, as the jury was told that "the defendant has no burden of proof," and that it should weigh the proven aggravating circumstances against the mitigating factors "offered" or "presented." In any event, we have previously addressed this issue and have upheld its constitutionality in *State* v. *Stumpf* (1987), 32 Ohio St. 3d 95, 512 N.E. 2d 598, certiorari denied (1988), 484 U.S. 1079.

As proposition of law number fourteen, the appellant makes several arguments that Ohio's death penalty statute is unconstitutional. This court has previously addressed all but one of these arguments and has found them to be not well-taken. See *State* v. *Wickline* (1990), 50 Ohio St. 3d 114, 124, 552 N.E. 2d 913, 923-924; *State* v. *Buell, supra; State* v. *Maurer, supra; State* v. *Zuern, supra; State* v. *Jenkins, supra.*

Appellant argues that a reviewing court must make a separate finding that a lower court's decision was not influenced by passion, prejudice or any other arbitrary factor. Because such inquiry is inherent in every death penalty review, we decline to accept appellant's argument. Since appellant has failed to present a compelling reason why we should now find the statute unconstitutional, we reject appellant's fourteenth proposition of law.

## N

Finally, we must independently review the death sentence for appropriateness and proportionality. Appellant murdered Angel Vincent after first kidnapping, robbing and raping her. We find that the aggravating circumstances were proved beyond a reasonable doubt.

As mitigation, appellant presented two witnesses during the penalty phase and addressed the jury in an unsworn statement. Neither witness was cross-examined and the prosecution presented no witnesses in the mitigation hearing.

One of the defense witnesses was the appellant's mother, Aziel Johnson. Ms. Johnson testified that appellant never knew his father, had graduated from high school, and was the father of two children.

The second witness, Janice Durr, testified that she was the appellant's common-law wife, the mother of his son, and that she was pregnant.

Weighing the various mitigating factors against the aggravating circumstances, we conclude that the

mitigating factors are outweighed by the aggravating circumstances beyond a reasonable doubt.

In comparing the sentence of death in this case to those cases where we have previously imposed the death sentence, we find the sentence here is neither excessive nor disproportionate to sentences for other convictions for murder with rape, kidnapping or robbery specifications upheld by this court. See, *e.g., State* v. *Cooey* (1989), 46 Ohio St. 3d 20, 544 N.E. 2d 895; *State* v. *Benner* (1988), 40 Ohio St. 3d 301, 533 N.E. 2d 701, certiorari denied (1990), 494 U.S. ___, 108 L. Ed. 2d 962, 110 S. Ct. 1834.

Therefore, in accordance with R.C. 2929.05(A), we affirm the conviction and sentence of death in this case.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

SWEENEY, DOUGLAS and RESNICK, JJ., concur.

MOYER, C.J., and H. BROWN, J., concur separately.

WRIGHT, J., dissents.

H. BROWN, J., concurring. I concur in the judgment and the opinion except for Section 1 of Division H. I do not believe the evidence is sufficient to support a conviction of rape.

MOYER, C.J., concurs in the foregoing concurring opinion.

WRIGHT, J., dissenting. I wish to applaud the majority's fine sense of irony. Coupled with an admonition that prosecutors should not comment to juries in capital cases about the finality of their verdicts are citations to *no fewer than five cases* where this court

allowed just such comments to be made without any form of sanction.

Permit me to suggest that the message is simply not getting through. Prosecutors continue to emphasize the fact that the jury's verdict "is only a recommendation." Consider this: the death sentence has been recommended by juries in one hundred one cases under the Ohio statute, as of February 7, 1991, according to the Ohio Public Defender Commission. Four of those recommendations have been overridden by trial judges, another nine were modified on appeal. If honesty is to be our hallmark — confining ourselves to concern with "accurate statements of the law" — then prosecutors should be compelled to tell juries that *nearly ninety percent of the time* the jury's recommendation is followed and upheld on appeal.

A majority of this court repeatedly has misstated *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, to the effect that "accurate statements of the law * * * not made to induce reliance on the appellate process" are not error. See *State* v. *Rogers* (1985), 17 Ohio St. 3d 174, 17 OBR 414, 478 N.E. 2d 984; *State* v. *Williams* (1986), 23 Ohio St. 3d 16, 32, 23 OBR 13, 28, 490 N.E. 2d 906, 920, Wright, J., dissenting. But, see, *Rogers* v. *Ohio* (1985), 474 U.S. 1002, peremptorily vacating *Rogers* in light of *Caldwell*.

The United States Supreme Court in *Caldwell* did not confine itself to forbidding only inaccurate or even misleading statements by prosecutors. The prosecutor in *Caldwell* was being truthful when he told the jury that its decision would be reviewed. The critical point, the court said, comes when a jury "* * * has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere."

*Caldwell, supra,* at 329. I suppose I should not view the majority too harshly on this point since the United States Supreme Court itself is backing away from *Caldwell,* limiting the decision to only those cases where "remarks to the jury improperly describe the role assigned to the jury by local law." *Dugger* v. *Adams* (1989), 489 U.S. 401, 407.

Despite a growing feeling of futility, I would like to reiterate what I said in *Williams, supra:*

"State-induced suggestions that the sentencing jury may shift its sense of responsibility for the imposition of the death penalty create a risk of substantial unreliability as well as potential bias in favor of death sentences." *Id.* at 34, 23 OBR at 29, 490 N.E. 2d at 922.