OPINION
Appellant, Steven Henderson, appeals from the judgment of conviction and imposition of sentence by the Trumbull County Court of Common Pleas entered upon a jury verdict finding him guilty of the forcible rape of a child. For the following reasons, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
On July 15, 1998, appellant was indicted by the Trumbull County Grand Jury on one count of rape in violation of R.C.2907.02(A)(1)(b)(2). Appellant subsequently entered a plea of not guilty to the charge. The trial court appointed counsel to represent appellant and the case proceeded to a jury trial on December 14, 1998. After two days of testimony, the jury returned a verdict of guilty. The trial court then sentenced appellant to a term of life in prison. Due to the nature of the crime, appellant was also classified as a sexually oriented offender.
From this decision, appellant filed a timely notice of appeal with this court. He now asserts the following five assignments of error for our review:
 "[1.] The defendant was denied his constitutional right to trial by an impartial jury when the court erred in responding to the report of an improper communication with the members of the jury panel.
 "[2.] The defendant was denied his constitutional right to a fair trial due to numerous instances of prosecutorial misconduct at trial which substantially prejudiced and misled the jury.
 "[3.] The defendant was denied his constitutional right to effective assistance of counsel when his attorney failed to protect his rights at and subsequent to trial.
 "[4.] The trial court erred in denying the defendant's Rule 29 motion after the State failed to present sufficient evidence that the offense was committed as described in the indictment.
 "[5.] The jury's decision finding the defendant guilty of rape was not supported by sufficient probative evidence, and was against the manifest weight of the evidence."
 I.
Under his first assignment of error, appellant argues that he was denied a fair trial by an impartial jury because the trial court failed to hold a hearing after learning of possible improper outside contact with the jury. The record shows that after the jury retired for deliberations, appellant's attorney informed the court that appellant's mother-in-law had been holding up pictures in view of the jury during the trial. While the precise nature of the pictures was unknown at the time, appellant's attorney said that the pictures in some way involved appellant. As a result, appellant's attorney asked the trial court to question the mother-in-law when she reappeared in the courtroom.[1]
The trial court declined appellant's request and, instead, told appellant's attorney to have the "appropriate authorities" investigate the matter. According to the court, it was unable to do anything about the situation because the jury had already began deliberating and it was too late to "quiz them about anything." As a result, no hearing was ever held on the matter.
The Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial, by an impartial jury[.]" See, also, Duncan v. Louisiana (1968), 391 U.S. 145 (the Due Process Clause of the Fourteenth Amendment requires that a person accused of a state crime be tried before a panel of fair and impartial jurors); Section 10, Article I, Ohio Constitution (establishing the right to "a speedy public trial by an impartial jury"). Thus, a verdict reached by a jury in a criminal prosecution must be based solely on the evidence and argument presented in open court, and not outside influences. State v. Williams (Dec. 24, 1998), Trumbull App. No. 97-T-0148, unreported, at 2, 1998 WL 964576.
In State v. Phillips (1995), 74 Ohio St.3d 72, the Supreme Court of Ohio set forth the procedure and applicable law a court must follow when an allegation is made that an improper communication has occurred with one or more members of the jury. "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror."
(Emphasis added.) Id. at 88, citing Smith v. Phillips (1982),455 U.S. 209, 215-216 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.") and Remmerv. United States (1954), 347 U.S. 227, 229-230 ("The trial court should not decide and take final action ex parte * * * but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."). See, also, Statev. Johnson (2000), 88 Ohio St.3d 95, 107.
Here, the trial court, being confronted with allegations of juror tampering, was obligated to hold a hearing to investigate the possibility that a biased attitude within the jury might prevent a just determination of appellant's guilt. Nevertheless, the trial court refused to hold a hearing or even question the person whom allegedly held up the pictures before the jury. While the trial court may be in the best position to determine the nature and extent of the proceeding surrounding claims of juror tampering, doing nothing is surely unacceptable and constitutes an abuse of discretion. Ezzo v. Osti (Dec. 3, 1999), Trumbull App. No. 98-T-0156, unreported, at 4, 1999 Ohio App. LEXIS 5782. Appellant's first assignment of error has merit.
 II.
In his second assigned error, appellant argues that he was denied a fair trial as a result of numerous alleged acts of prosecutorial misconduct at every stage of the proceedings. Appellant believes that the inflammatory actions of the prosecutor in this case misled the jury and substantially prejudiced his defense.
However, with one exception, appellant failed to object to the alleged misconduct he now complains about. Therefore, appellant has waived all but plain error with respect to those particular remarks. Crim.R. 52(B); State v. Robb (2000), 88 Ohio St.3d 59,86; State v. Keith (1997), 79 Ohio St.3d 514, 518. Plain error is an obvious error or defect in the trial proceedings that affects a substantial right. State v. Jones (Aug. 27, 1999), Ashtabula App. No. 96-A-0009, unreported, at 8, 1999 Ohio App. LEXIS 3979. Under this standard then, a reversal is warranted only when the outcome of the trial clearly would have been different without the error. Id.; Keith at 518.
In order to make a finding of prosecutorial misconduct, a reviewing court must determine whether the challenged statements were improper, and if so, whether the remarks affected the defendant's substantial rights. State v. Smith (2000), 87 Ohio St.3d 424,442; State v. Cornwell (1999), 86 Ohio St.3d 560, 570;State v. Jordan (Oct. 15, 1999), Trumbull App. No. 97-T-0088, unreported, at 17, 1999 Ohio App. LEXIS 4873. However, prosecutorial misconduct is not grounds for reversal unless it so taints the proceedings that a defendant is deprived of a fair trial. Smith, 87 Ohio St.3d at 442; Cornwell at 570-571; Jordan
at 17. While not all of appellant's allegations are supported, we determine that the cumulative effect of the numerous instances of prosecutorial misconduct which did occur, rise to the level of plain error.Appellant first claims that the prosecutor improperly expressed personal opinions during both opening and closing argument as to the credibility of several of the state's witnesses and on the issue of appellant's guilt. The state counters by arguing that personal beliefs of the prosecutor are permissible if the comments are based on evidence in the record. State v. Davie
(1997), 80 Ohio St.3d 311, 330 (holding that several comments made by the prosecutor concerning the defendant and his defense were not improper), citing State v. Durr (1991), 58 Ohio St.3d 86, 96
(holding that remarks made by the prosecutor concerning the defendant's guilt and his attorney were not improper because they were supported by the evidence admitted at trial).
However, we note that both Davie and Durr focus almost exclusively on remarks made during the penalty phase of a capital case rather than the guilt phase. We find that to be a significant difference. For example, in Durr, the court noted that:
 "`* * * Since the penalty phase of a capital trial `is a moral inquiry into the culpability of the defendant* * * *,' * * * it is difficult for prosecutors to argue vigorously for the death penalty without making what might arguable be statements of personal opinion. In any case, we have held that a prosecutor may state his opinion if it is based on the evidence presented at trial." (Citations omitted.) Durr at 96, quoting State v. Tyler (1990), 50 Ohio St.3d 24, 41.
 The remarks objected to here were all directed to a jury charged with the determination of appellant's guilt or innocence. There was no "penalty phase" where the prosecutor had greater latitude in voicing a personal opinion. Here, the prosecutor's directly impacted the ultimate question of guilt by endorsing the credibility of the state's witnesses and denigrating the credibility of appellant and his witnesses. Many times the comments were not even remotely related to the evidence. In those instances where there was a relationship, the implication of the prosecutor's remarks was a deliberate distortion of the clear import of the evidence.
We believe the law in Ohio is clear that prosecutors should avoid expressing personal beliefs or opinions with respect to theguilt of the accused as well as to the credibility of the witnesses. State v. Lott (1990), 51 Ohio St.3d 160, 166; State v.Smith (1984), 14 Ohio St.3d 13, 14. As a result, we determine that most of the challenged remarks made by the prosecutor improperly related to her personal assessment of the credibility of appellant, the victim, and other state witnesses. Further, we determine that these remarks did not simply reflect reasonable inferences to be drawn from the evidence, but rather, the comments often times were not based on any evidence of record.
Numerous times during her opening statement and closing argument, the prosecutor made reference to the fact that the victim was going to and/or did testify truthfully about the events in question. The prosecutor also told the jury that the victim's mother was going to testify at trial because she, the mother, believed the victim was telling the truth about the alleged rape.
It is not improper to comment fairly on a witness' credibility based upon his or her in-court testimony. State v.Keene (1998), 81 Ohio St.3d 646, 666 (holding that the prosecutor's description of a witness as "one of the best witnesses any of us has seen in quite awhile" was properly supported by the record); State v. Mundy (1994), 99 Ohio App.3d 275,300. However, as we noted above, a prosecutor may not state his or her own unsupported belief as to whether or not a witness is telling the truth. Smith, 14 Ohio St.3d at 13. Such actions "invade the province of the jury, and invite the jury to decide the case based upon the credibility and status of the prosecutor." State v. Draughn (1992), 76 Ohio App.3d 664, 670.
Here, we conclude that the prosecutor's remarks did invade the province of the jury. Throughout the proceedings, the prosecutor commented on the veracity of the witnesses and on how she believed that they were or were not telling the truth. This conduct went beyond merely arguing reasonable inferences from the given testimony, and instead, reflected the personal feelings of the prosecutor that the witnesses were or were not credible.
Appellant also maintains that the prosecutor improperly implied during closing arguments that he had forged a lease. At trial, appellant offered evidence which raised the issue that the victim was not living at the residence listed in the bill of particulars as the site of the alleged illegal conduct. The landlord testified that the victim and her mother had not moved into the home until the middle of March 1997. He relied upon the lease as his reference for the dates. This time frame conflicted with the bill of particulars, which listed the date of the crime as sometime during January or February 1997.
The state did not call a witness to rebut the landlord's testimony. Nor did it evoke other testimony to challenge the authenticity of the lease or its signatures. Instead, during her closing argument, the prosecutor pointed out to the jury that the dates on the lease looked like they may have been altered. The prosecutor also reminded the jury that appellant had previously been convicted of forgery.
While the state may comment freely on "`what the evidence has shown and what reasonable inferences may be drawn therefrom[,]'"Lott at 165, quoting Stephens at 82. The prosecutor's conduct in the instant matter clearly overstepped the bounds of permissible advocacy. There is absolutely nothing in the record to support the theory that appellant forged the lease. No one had stated or implied that the signatures were suspect. In addition, no one testified that appellant ever had access to the document after it had been originally executed. Frankly, the issue had never even been raised in any way during the trial. The mere fact that appellant had been previously convicted of forgery in an unrelated case is not enough to allow the prosecutor to submit such a theory to the jury. Not only were the prosecutor's comments in this regard unsupported by any admissible evidence, they border on a calculated attempt to mislead the jury. See, generally, State v.Keenan (1993), 66 Ohio St.3d 402, 409 (noting that the prosecutor's remarks in that case crossed the line that "separates permissible fervor from a denial of a fair trial.")
We believe that the following admonition issued in Lott is still valid:
 "We have previously noted: `Where opinions [on guilt] are expressed on facts outside the evidence, or are predicated on inferences based on facts outside the evidence, such opinions have not been countenanced and the judgments in those cases have been reversed upon appeal.' * * * However, where the reference to matters outside the record is short, oblique, and justified as a reply to defense arguments and elicits no contemporaneous object, there is no prejudicial error." (Citations omitted.) Lott at 166.
 The fact that the latter exception does not apply to the instant case is vividly obvious from the next instance. Appellant claims that the prosecutor improperly interjected hearsay into her closing argument by recollecting a conversation she had with the victim outside of the courtroom. The prosecutor said:
 "Yesterday after she [the victim] came and testified do you know what she asked me? She said, `Sarah [the prosecutor], do I have to come in here tomorrow because I want to be at school, I don't want to miss school?' That's the type of girl she is."
 Although, the trial court sustained appellant's objection to the complained of remark, we consider it to be too little, too late. That remark was just one more example of the prosecutor attempting to bolster the credibility of the key witness.
Appellant next argues that the prosecutor attempted to inflame the jury's passions by referring to him in derogatory terms during the course of closing arguments. Specifically, appellant takes issue with the prosecutor's characterization of himself as a "thief," a "forger," a "drug addict," and a "convicted felon."
Throughout the trial, the record shows that the prosecutor tried to demonize appellant in front of the jury rather than argue the facts of the case. Keenan at 407. For example, appellant took the stand in his defense and admitted to the jury that he had previously been convicted of receiving stolen property and forgery. No one, however, testified with respect to the facts underlying the convictions or to their classification as either misdemeanor or felony offenses. Although the offenses may be felonies in Ohio, that is not completely dispositive of the issue because the record does not show where the convictions occurred.
Moreover, there was absolutely no evidence introduced at trial showing that appellant was a "drug addict." Appellant testified on direct that he had used drugs in the past. However, there was no evidence to support the prosecutor's statement that appellant was a "drug addict." Very simply, while all drug addicts are users, not all drug users are addicts. While a prosecutor is permitted to argue reasonable inferences drawn from the record, he or she is not permitted to argue a position that is unsupported by any of the evidence. A minor point, perhaps, but it is one more example in the collective string of prosecutorial improprieties.
Even voir dire was used as a means to improperly suggest to potential jurors that, regardless of the quantum of evidence, the "correct" verdict in a child molestation case was guilty. Specifically, the prosecutor informed members of the prospective jury pool that guilty verdicts had been reached in a number of specific and notable child rape cases, despite a complete lack of physical evidence.
When questioning a potential juror, the following exchange occurred:
 "[the Prosecutor] MS. KOVOOR: Has anybody seen any newspaper articles on some of the cases involving clergy molesting young boys? Ms. Foor, you have?
"MS. FOOR: Yes.
 "MS. KOVOOR: In those case, and I haven't read to many but a while back I did, they involved, like I said, clergy molesting young boys but those were cases that were reported years later when they were adults so of course there is no physical evidence.
"MS. FOOR: Yes.
 "MS. KOVOOR: And it was do you know what happened in those cases?
"MS. FOOR: No, I don't remember what happened.
 "MS. KOVOOR: Well, at least in the cases in Texas and Ohio at least some of those clergymen were found guilty of those charges."
 Certainly, a prosecutor should be permitted to discuss the concept of circumstantial evidence with potential jurors. However, suggesting that the lapse of time in child rape cases somehow lessened the need for evidence is inherently prejudicial. The prosecutor's clear implication is that child molestation trials require less evidence for a conviction than trials for other crimes. Hence, this was not an academic attempt to enlighten the jury pool about circumstantial evidence; instead, it was a blatant attempt to mislead them.
Appellant finally argues that the prosecutor gave potential jurors an erroneous legal instruction regarding the element of force in a child rape case. The prosecutor asked the following during voir dire:
 "MS. KOVOOR: The State in this case would have to prove, of course, rape, it would have to be by force or threat of force.
"MS. HILL: Uh-huh.
 "MS. KOVOOR: When it involves a child would you agree that force can be just the presence of an adult human being or body language or words versus bruises and knives and that sort of thing?
 "MS. HILL: Not necessarily bruises and knives but force or words.
"MS. KOVOOR: Could be words?
"MS. HILL: Of course."
 In State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph one of the syllabus, the Supreme Court of Ohio held the following:
 "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and the relation to each other. * * *"
 While Eskridge involved a parent-child relationship, the court extended its holding to include non-family members in similar positions of authority in State v. Dye (1998), 82 Ohio St.3d 323, 329. In doing so, the court noted that "it is nearly impossible to imagine the rape of a child without force involved." Id. at 327.
 "`[However,] force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" Id., quoting Eskridge at 58-59, quoting State v. Fowler (1985), 27 Ohio App.3d 149, 154.
 The prosecutor appeared to be arguing that the mere presence of an adult could be enough to show force. This is clearly not the articulated standard. In fact, the definition provided by the prosecutor does not imply anything close to the holdings in Eskridge and Dye. Therefore, this court concludes that the prosecutor's remarks were improper and prejudicial even though they were not objected to by defense counsel.
We agree that not all of the complained of actions, when viewed in isolation, rise to the level of plain error. However, taken together the actions of the prosecutor in this case demonstrated a course of conduct that was sufficiently pervasive and prejudicial so as to constitute reversible error. The prosecutor repeatedly commented on issues which had no basis of fact in the evidentiary table, endorsed the truthfulness of the prosecution witnesses, and at the same time conducted a personal attack on the credibility of appellant and his witnesses.
As is frequently the case in this type of crime, this was a "he said, she said" prosecution. Thus, the prosecution correctly surmised that the jury might have difficulty with the absence of any physical evidence demonstrating that the rape actually took place, as well as the absence of any physical evidence connecting appellant to the crime, if in fact it took place. The critical issue in this case, therefore, was the credibility of the victim and appellant because there was absolutely no other compelling evidence upon which the jury could rely.
Accordingly, the multitude of unsupported, inaccurate, and even untruthful statements by the prosecutor requires a reversal because it was obvious that appellant did not receive a fair trial. Appellant's second assignment of error has merit.
 III.
In assignment of error three, appellant argues that his trial counsel was ineffective for failing to object to the prosecutor's alleged misconduct during trial and for failing to move for a mistrial, or in the alternative, more strongly urge the trial court for a hearing based on his allegation of juror tampering.
To be successful on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v.Washington (1984), 466 U.S. 668, and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Sherman (June 25, 1999), Portage App. No. 98-P-0009, unreported, at 7-8, 1999 Ohio App. LEXIS 2940; State v. Nicholas (Dec. 23, 1999), Portage App. No. 98-P-0061, unreported, at 6, 1999 Ohio App. LEXIS 6265.
First, a defendant must be able to show that his trial counsel was deficient. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id. A defendant making such a claim must prove that his trial counsel's representation fell below an objective standard of reasonableness. Id. at 142, citing Strickland at 687-688. See, also, State v. Sallie (1998),81 Ohio St.3d 673, 674.
There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98,100; Sherman at 8-9; Jones at 11. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance.State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, at 35, 1996 Ohio App. LEXIS 5807.
In addition to proving that trial counsel was deficient, a defendant must also show that the deficient performance prejudiced his defense. Bradley at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id.
at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
at 142. A reviewing court must always remember that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland at 686.
Generally, debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available.Rudge, at 35. See, also, Phillips, 74 Ohio St.3d at 85; Sherman
at 9; Jones at 11. As a result, errors of judgment regarding tactical matters do not substantiate a defendant' claim of ineffectiveness assistance of counsel. Phillips,74 Ohio St.3d at 85. This court must assess the reasonableness of trial counsel's decisions at the time they are made, not at the time of our assessment. Id.
Taking all of this into account, and based on our previous determination that the prosecutor committed multiple instances of misconduct, we conclude that appellant's attorney was ineffective. The failure of his attorney to object to the pervasive and egregious actions of the prosecutor certainly prejudiced appellant's defense and produced a reasonable probability that the outcome of the trial could have been different. Moreover, it certainly undermined any confidence in the jury's verdict.
Appellant next argues that faced with the possibility of juror tampering, a reasonably competent trial attorney would have moved for a mistrial, and if the mistrial were not granted, he would have insisted upon a hearing to elaborate on the allegations of juror tampering. We do not believe that appellant has demonstrated that his attorney's performance was prejudicial in this regard. While a motion for a mistrial may have been deserved, it clearly had no chance of success once the request for a hearing was denied. Appellant's concerns had already been raised and overruled on the record.
As for appellant's assertion that his attorney should have argued more strenuously for a hearing on his allegations, trial counsel did make a prima facie showing of tampering. The trial court, however, summarily denied this request. The burden was on the trial court to conduct a hearing under these circumstances, and as we already concluded, the failure to hold a hearing was error. As a result, appellant has failed to show in this respect that his attorney's actions fell below the level of reasonable representation, or that he was prejudiced by those same actions with respect to the juror tampering. Appellant's third assignment of error has merit to the extent indicated.
 IV.
In his fourth assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion because the evidence showed that the victim was not living at the residence where the offense allegedly occurred on the dates specified in the indictment and in the bill of particulars. Likewise, in his fifth assignment of error, appellant maintains that the jury's verdict was not supported by sufficient evidence and that the verdict was against the manifest weight of the evidence. Specifically, he argues that no rational trier of fact could have found that the victim was living at the residence where the offense allegedly occurred on the dates specified in the indictment and in the bill of particulars.[2] Because both assignments of error involve the same issue, they will be dealt with in a consolidated fashion.
Under Crim.R. 29, the trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Accordingly, a motion for judgment of acquittal under Crim.R. 29 should be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch (1987), 33 Ohio St.3d 19,23. Thus, an appellate court must apply the same standard in reviewing a denial of a motion for acquittal as if it were reviewing a challenge to the sufficiency of the evidence.
When reviewing the sufficiency of the evidence to support a criminal conviction, a court must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average juror of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307. See, also, State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L- 082, unreported, at 16, 1994 Ohio App. LEXIS 5862.
On the other hand, when reviewing a claim that the judgment was against the manifest of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387; State v. Duong (Dec. 11, 1998), Trumbull App. No. 98-T-0026, unreported, at 4, 1998 Ohio App. LEXIS 5999; Schlee
at 14-15.
"The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
To convict appellant of the charged crime, the state was required to prove that appellant engaged in sexual conduct with a child under the age of thirteen by purposely compelling submission by force or threat of force. R.C. 2907.02(A)(1)(b)(2). However, appellant does not contest any of the above elements, and instead, argues that the state failed to prove that the victim was living at 2038 Hamilton Street at the time the rape was committed. We will, therefore, confine our analysis to the assigned error.
Appellant argues that in some cases the nature of the accused's defense makes critical the date and time of the alleged criminal conduct. While that may be true, the precise dates and times are not essential elements of rape, and therefore, are not essential to convict. State v. Sellards (1985), 17 Ohio St.3d 169,172. See, also, State v. Calhoun (Apr. 4, 1997), Geauga App. No. 96-G-1971, unreported, at 2, 1997 WL 184762 ("Venue is neither a jurisdictional nor a material element of a criminal offense"). Rather, the indictment only is only required to contain an allegation that the offense was committed within the jurisdiction of the court. State v. Wilcox (Dec. 20, 1996), Trumbull App. No. 96-T-5441, unreported, at 1, 1996 WL 760909.
Appellant does not argue that the crime did not occur within Trumbull County. Moreover, it is uncontested that the victim did, at one point, live in the residence at issue. Instead, he is claiming that the rape could not have happened because the victim was not living at 2038 Hamilton Street at the time she alleged the crime occurred.
That, however, does not automatically lead to the conclusion that no rape took place. Rather, it implies that the recollection of the victim was either faulty or false in regard to either the location or the date of the crime. The issue of when the victim was living at the home only related to the credibility of the witness, an issue within the province of the jury. By the jury's verdict, we assume that the jury found the overall testimony of the victim to be more credible than that of appellant.
Based on the foregoing analysis, we conclude that even if the jury disbelieved the victim's testimony about the dates she live in the residence, the jury, nevertheless, could have reasonably found that appellant forcibly engaged in vaginal intercourse with the victim when she was eleven years old. The fact that there was some evidence that the victim was not living in the residence indicated in the bill of particulars is immaterial to anything except credibility. The exact location and date of the crime was not an essential element and did not have to be proven by the prosecution beyond a reasonable doubt.
In addition, after reviewing the entire record, and weighing the evidence presented by the state and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the jury did not loses its way or create a manifest miscarriage of justice in connection with appellant's conviction for rape. Accordingly, appellant's fourth and fifth assignments of error are without merit.[3]
For the foregoing reasons, appellant's first, second, and third assignments of error have merit. Appellant's fourth and fifth assignments of error are without merit. Thus, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
[1] On appeal, appellant alleges that the photos in question were pictures of his wife's bruised face. Evidently, before his rape trial, appellant had been convicted of domestic violence involving his wife. The allegation in the brief was that she intended and tried to show these pictures to members of the jury when they were in and around the courthouse. However, this specific evidence was not presented to the trial court.
[2] While appellant claims that the address in question was included in the indictment, the record shows that it was not. The address was, however, included in the bill of particulars.
[3] Our disposition of the last two assignments is made with the understanding that the jury obviously believed the prosecutor's witnesses and disbelieved the defense witnesses, and that the jury's credibility assessments may have been influenced by the conduct of the prosecutor. However, based on the evidence before us as it existed at trial and the apparent credibility assessments which were made, the record supports appellant's convictions. This determination is subject to change upon appellant's retrial.