OPINION
Appellant, Martice Lamar Boddie, appeals a judgment of conviction of the Common Pleas Court of Allen County rendered pursuant to a jury verdict of guilty on one count of complicity in aggravated arson, one count of complicity in aggravated robbery and five counts of complicity in murder. For the following reasons, we affirm the convictions.
The facts and procedural history of the case are as follows. Appellant, Martice Lamar Boddie, Corey Summerhill, Samuel Williams, and Eddie White, among others, were involved in the sale of drugs in Allen County. Williams acted as a supplier while the others sold the drugs.
Sometime shortly after March 17, 2000, a safe containing thirty-four ounces of cocaine and two thousand dollars was stolen from Summerhill's residence. That evening, Boddie, Summerhill, Williams, White, and others, attempted to determine the thief's identity. This investigation continued over the next several days, eventually identifying Rodney Bunley as the culprit.
On March 29, 2000, a group of several men collectively organized and executed a plan to retrieve the cocaine and money. Bunley would be driven out of his home with the drugs and money by setting fire to his residence. Once driven from the residence, some of the men would rob him of the items in his possession. On or about 12:00 a.m. that evening, fire was set to the home by throwing two lit bottles of gasoline through the front plate glass window. A fire erupted quickly within the front interior portion of the home. The ensuing fire resulted in the death of five people, four of whom were children. Rodney Bunley, the target of the conspiracy, was the only person in the household who managed to escape.
On April 19, 2000, an Allen County grand jury returned a seven count indictment charging Boddie with one count of complicity in aggravated arson, a felony of the first degree in violation of R.C. 2923.03(A)(2) and R.C. 2909.02(A)(1); one count of complicity in aggravated robbery, a felony of the first degree in violation of R.C. 2923.03(A)(2) and R.C.2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.141(A); and five counts of complicity in aggravated murder, in violation of R.C.2923.03(A)(2) and R.C. 2903.01(B).
Trial was scheduled for June 27, 2000. On June 14, 2000, Boddie moved the court to continue the previously scheduled trial date, expressly waiving his rights to a speedy trial. The motion was granted and trial was rescheduled for August 15, 2000. This date was further continued at the motion of the State of Ohio, until September 5, 2000.
Boddie filed a motion for change of venue on July 17, 2000. The trial court took the motion under advisement, postponing disposition until the conclusion of voir dire. The motion was denied after voir dire. He also filed a motion for individual sequestered voir dire, which was denied.
Conflicting testimony was presented at trial regarding the extent of Boddie's knowledge and participation in the events leading up to, during, and after the fire; however, on September 15, 2000, the jury returned a verdict finding the Boddie guilty on all counts. This appeal followed.
Appellant presents the following as his assignments of error.
 Assignment of Error I Appellant's right to a speedy trial was denied when the trial court allowed the state to delay the trial beyond the statutory time limits and beyond the agreed starting date over defendant's objection.
 Boddie claims that he was not brought to trial in accordance with Ohio's speedy trial statutes and that the failure to do so violated his statutory, state and federal constitutional rights.
A person charged with a felony must be brought to trial within two hundred seventy days after his arrest.[1] Each day the accused is in jail in lieu of bail is counted as three days in computing the time under the statute.[2] Boddie was arrested on April 13, 2000, and thereafter remained incarcerated until his trial commenced on September 5, 2000. Pursuant to statute, Boddie should have been brought to trial no later than July 11, 2000.
Once a defendant demonstrates that he was not brought to trial within the permissible period, he presents a prima facie case for release.[3]
The State then has the burden to demonstrate that the defendant was not entitled to release pursuant to the tolling events contained in R.C.2945.72.[4] It must also be pointed out that these tolling provisions are to be construed strictly against the State.[5]
The reasons for which the time an accused must be brought to trial may be properly extended include any delay necessitated by motion of the accused, any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the motion of the accused.[6]
The tolling events set forth in R.C. 2945.72 "do not unconditionally extend the time limit in which an accused must be brought to trial, but rather, this limit is `merely extended by the time necessary in light of the reason for the delay.'"[7]
In the present case, Boddie moved the court, on June 14, 2000, to continue the originally scheduled trial date of June 27. The trial court granted his motion and continued the trial to August 15, 2000. At that time, Boddie expressly waived, on the record and in writing, his speedy trial rights. Therefore, pursuant to the tolling provisions of R.C.2945.72(H), Boddie had to be brought to trial prior to September 10, 2000. Since the trial commenced on September 5, 2000, we find that Boddie was tried within the statutory guidelines of R.C. 2945.71.
In order to trigger a constitutional speedy trial analysis, an accused must allege and establish that the interval between accusation and trail has become a "presumptively prejudicial" delay. "Courts have generally found post accusation delay `presumptively prejudicial' at least as it approaches one year."[8] Since Boddie was arrested on April 13, 2000 and trial was commenced on September 5, 2000, Boddie has failed to make such a threshold showing, and the delay herein is not "presumptively prejudicial."
Accordingly, Boddie's first assignment of error is overruled.
 Assignment of Error II The trial court erred by not imposing an effective sanction against the State of Ohio for failing to provide discovery in a timely manner.
 In his second assignment of error, Boddie argues that the State failed to provide discovery relating to telephone records and that the trial court erred in admitting these records into evidence at trial.
The evidence in question consists of the records of Sprint United Telephone concerning several telephone numbers detailing all local and long distance calls made from these numbers between March 1, 2000 and July 18, 2000. While Boddie filed a demand for discovery in June 2000, these records were not furnished to him until they were presented in Court on September 7, 2000.
When a discovery violation occurs, the appropriate sanction is generally left to the discretion of the trial court.[9] Crim.R. 16(E)(3) provides that if, during trial, it is brought to the attention of the court that a party has failed to comply, the court may "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed or it may make such other order it deems just under the circumstances."
The Ohio Supreme Court has held that a trial court does not abuse its discretion when admitting the testimony of an undisclosed witness if: (1) the failure to provide discovery was not willful, (2) foreknowledge of the statement would not have benefited the defendant in the preparation of the defense, and, (3) the defendant was not prejudiced by the admission of the evidence.[10] This standard of review applies equally to other evidence not properly disclosed by the State but admitted at trial.[11]
Immediately, upon Boddie's objection to this evidence at trial, the trial court called a recess and took the objection under advisement. The trial court granted Boddie an unlimited recess to review the questioned exhibits. In fact, the recess consumed the remainder of September 7. Upon reconvening the following morning, the trial court conducted a hearing on the objection and sanctions. At the conclusion of the hearing, the trial court ruled that the violation of discovery was not willful finding that the defense had been furnished a summary of these records, and was put on notice that an employee of the phone company would be testifying long before trial, and that the defense was not prejudiced since an unlimited recess had been granted for the defense to review in detail the records.
It appears from the record that while the State did fail to provide these complete records to Boddie prior to trial, that the failure was not willful because of the disclosure of the summaries and the notice that a person from the telephone company would be testifying long before trial. The trial court did not abuse its discretion in making such a finding.
The second prong of the Heinsh inquiry asks whether foreknowledge of the actual records would have benefited Boddie in the preparation of his defense. In this regard, Boddie seems to suggest that he was prejudiced because if he had the records earlier, he could have used them to cross-examine other witnesses who had already completed their testimony. His argument, however, fails to disclose how that cross-examination would have resulted any differently, and the record further fails to indicate that Boddie attempted to recall any of these prior witnesses. Therefore, Boddie waived any defect in this regard. Boddie further suggests that if he had the records earlier, he would have called an expert witness as to the accuracy of Sprint's record keeping methods. Again, he fails to explain how that results in prejudice to him. Therefore, Boddie has failed to satisfy the second prong of the Heinsh test.
The third prong of the test requires a showing that he was prejudiced by the admission of the records. Boddie has utterly failed to establish that he was prejudiced in any fashion by the admission of these records after his "unlimited" recess to review them. The records are not in and of themselves prejudicial, as they only record facts that are in existence. The contents of these records are consistent with the testimony of numerous witnesses. Therefore, the trial court did not abuse its discretion by admitting the telephone records into evidence.
Accordingly, Appellant's second assignment of error is overruled.
 Assignment of Error III The court erred as a matter of law in allowing the State to use evidence prohibited by Evidence Rule 801(D)(2)(e) and failing to instruct the jury properly concerning use of evidence of obstruction of justice as proof of aiding and abetting.
 In his third assignment of error, Boddie contends that the trial court erred in two respects. First, Boddie argues that the trial court erred in permitting co-conspirators to testify as to hearsay statements. Second, he asserts that the trial court erred in improperly instructing the jury regarding complicity. These arguments will be addressed in turn.
 Co-Conspirator Statements
Boddie asserts that Evid.R. 801(D)(2)(e) is available only where the party is specifically charged with conspiracy and that his subsequent actions may not be used to prove that conspiracy. However, courts have consistently held that the State may prove the existence of a conspiracy in order to introduce out-of- court statements by conspirators without charging the substantive offense of conspiracy.[12] Furthermore, "[c]onspiracy and common purpose, among two or more persons, to commit crime need not be shown by positive evidence, but may be inferred from circumstances surrounding the act and from defendant's subsequent conduct."[13]
Boddie also contends that the prosecution failed to make a prima facie showing of the existence of the conspiracy by independent proof. Evid.R. 801(D)(2)(e) excludes from the definition of hearsay all statements "offered against a party * * * by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Pursuant to the express terms of the rule, the statement of a co-conspirator is not admissible until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof. The phrase "independent proof" precludes the use of the statement itself to establish the existence of the conspiracy.[14]
The record reflects that at the time of the subject testimony, the state had established the existence of a general on-going drug dealing conspiracy between Summerhill, Sam Williams, Eddie White and Boddie, among others. The parties' subsequent actions were taken in furtherance of this conspiracy, which continued to exist for the purpose of retrieval of the stolen drugs. It is not necessary that Boddie be charged with the sale of or conspiracy to sell drugs in the indictment for the co-conspirator statements to be admissible. Thus, at the time the co-conspirator statements were elicited, a sufficient foundational prima facie showing of the existence of a conspiracy between Boddie and others had been made by the state by independent proof as required by Evid.R. 801(D)(2)(e). Therefore, we find no error in the admission of the challenged statements.
 Jury Instructions
Generally, "requested instructions in a criminal case must be given when they are correct, pertinent, and timely presented. The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder."[15]
The trial court instructed the jury as follows:
COMPLICITY:
 Aiding and Abetting contains two basic elements: An act on the part of the defendant, which contributes to the execution of a crime and the intent to aid in its commission.
 Before you find the defendant guilty of complicity in the commission of an offense, you must find beyond a reasonable doubt that the defendant must have taken a role in causing the commission of an offense. That he helped, assisted, strengthened, advised, hired, incited, commanded, encouraged, or counseled the principal to do the act. In the absence of a conspiracy or some other preceding connection with the transaction, one does not aid or abet if he merely sees a crime being committed. Mere association with the principal is not enough.
 To prove aiding and abetting, however, direct and circumstantial evidence may be introduced. Therefore, participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. In other words, there must be proof that Defendant, Martice L. Boddie, had in some way participated in, or been a part of the act committed.
 Boddie does not allege that this instruction was incorrect. Instead, he contends that it was incomplete without including the following language:
 That inference, if you choose to make it, may be considered but it shall not be considered a conclusive presumption.
 You may not infer that the defendant committed complicity from the fact that he was an accessory after the fact.
 In the absence of a conspiracy or some preceding connection with the transaction, one does not aid or abet if he merely sees a crime being committed, or if he is a mere accessory after the fact.
 However, the additional language requested by Boddie was unnecessary. The instruction that was actually given by the trial court does not create a mandatory presumption and clearly requires more than mere after-the-fact presence or approval. Therefore, the trial court properly refused to make the requested additional charge.
Accordingly, Appellant's third assignment of error is overruled.
 Assignment of Error IV The conviction should be reversed for prosecutorial misconduct when the cumulative effect of the Prosecutor's acts and comments prejudicially affect the substantial right of the accused.
 Assignment of Error VI The Defendant was denied his constitutional right to equal protection of law, due process of law and a fair jury trial.
 Because Boddie's fourth and sixth assignments or error reiterate several arguments addressed in previous assignments of error and contend, generally, that he was denied his right to a fair trial, they are sufficiently related to be addressed simultaneously.
 Prosecutorial Misconduct
Boddie asserts that the individual and cumulative instances of prosecutorial misconduct throughout the proceedings deprived him of the right to a fair trial.
The test for prosecutorial misconduct is whether remarks or actions were improper and, if so, whether they prejudicially affected substantial rights of the accused.[16] A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial.[17] The effect of the prosecutor's misconduct must be considered in light of the whole trial.[18] The touchstone of the analysis "is the fairness of the trial, not the culpability of the prosecutor."[19]
Boddie sets forth seven allegations of prosecutorial misconduct, the first three of which were addressed in his first and second assignments of error.
Boddie's fourth allegation contends that the prosecutor's contact with a witness and removal of an exhibit from the courtroom during a break in cross-examination prejudiced his right to a fair trial.
A trial court's inherent authority and wide discretion in exercising its duty to administer proceedings and supervise members of the bar appearing before it will not be disturbed absent a showing that the court abused that discretion.[20] No general rule absolutely forbids attorney-witness contact between direct and cross-examination.[21]
Such contact may create an appearance of impropriety, but does not necessarily prevent a fair trial.[22]
During its case in chief, the prosecution called an employee of Sprint United Telephone, to testify to the phone records of various parties. During a recess, while cross-examination was suspended, a prosecutor removed the exhibit from the courtroom and conferred with the witness. Boddie objected to the impropriety of the conversation and removal of the exhibit.
Immediately after the recess, the trial court permitted the parties to voir dire the witness about the communication. Voir dire revealed only that the prosecutor informed the witness of how the exhibit was organized. There is no evidence that the prosecutor instructed or influenced the witness to change his testimony in any manner. Cross-examination was permitted to proceed without limitations, with Boddie being free to attack the reliability of the records, as well as the credibility of the witness.
Five days after the testimony Boddie also alleged that the exhibit had been returned after the recess with its contents in a different order. Specifically, he claimed that records of his phone activity had been moved from the front of the exhibit to the back of the exhibit. Upon this allegation, the trial court recessed for the day to allow the parties the afternoon and evening to review the records, revisiting the matter the following day. After lengthy discussion, the trial court found Boddie's contentions to be unsupported, noting that the exhibit was loose from its binding as the witness leafed through the pages during his testimony.
Boddie does not contend, and the record does not reveal, that any items were added to or removed from the exhibit. With Boddie having agreed that the binding was loose, the record provides no indication of manipulation of the exhibit. Other than asserting the appearance of impropriety, he has failed to illustrate how he was prejudiced. Admittedly, Boddie had sufficient time to review the exhibit and records, he was fully aware of the contents of the exhibit, and he was not prevented from examining the witness as to his personal phone records.
Though it is generally improper for counsel to remove exhibits from the courtroom during trial proceedings, we cannot say that the trial court abused its discretion in its control of the parties and proceedings herein. Boddie's right to a fair trial was not materially prejudiced in this regard.
 Ex Parte Discovery Delivery
Boddie's fifth allegation of misconduct asserts that the state's delivery of a discovery package to the court was an improper ex parte communication.
Canon 3(A)(4) of the Code of Judicial Conduct states in part:
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding.
* * *
 Nothing contained herein, however, shall preclude a judge from nonsubstantive ex parte communications on procedural matters and matters affecting prompt disposal of the business of the court.
"Ex parte communication" is defined as:
 Ex parte. On one side only; by or for one party; done for, in behalf of, or on the application of, one party only. A judicial proceeding, order, injunction, etc., is said to be ex parte when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested.[23]
 The discovery package at issue contained two banker's boxes of statements, documents, pictures and videotapes. The trial court indicated that "[b]y custom, the discovery package is filed in the case as proof of its delivery [to defense counsel]." Boddie does not allege, and the record does not indicate, that the court received anything more than what he received. Mere delivery of a discovery packet, without more, does not amount to a substantive ex parte communication between the trial court and the prosecution.
 Closing Argument
Boddie's remaining allegation of misconduct asserts that improper statements by the prosecution during closing arguments deprived him of the opportunity for a fair trial. Our review of the record indicates that he failed to object to the referenced remarks during closing arguments. Because Boddie failed to object to the referenced portions of the closing argument, he has waived any right, save plain error, to object to the closing argument.[24]
The prosecution is entitled to a certain degree of latitude in summation.[25] During closing argument reasonable inferences may be drawn from, and characterizations made of, the evidence presented at trial.[26] In making a determination of whether the remarks were prejudicial, an appellate court must consider all relevant factors, including: (1) the nature of the closing remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.[27] "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments."[28]
First, Boddie takes issue with the prosecution's general characterization of the case and reference to him and his co-defendants as "dopers":
 This case is about dope. It's about cocaine. It's about marijuana. I'm sure the testimony you folks heard over the last eight days was startling, and perhaps shocking to some of you, that people live this way in our community. I mean, these people were on a party. They didn't work. * * * That's their life. They think different than we do.
* * *
But, you heard these dopers.
 Boddie neither objected nor requested cautionary instructions. The events giving rise to the underlying indictments were predicated upon the use, sale, and retrieval of drugs. Furthermore, there was sufficient independent evidence to convict Boddie of the crimes charged. These comments did not contaminate the proceedings nor materially prejudice his right to a fair trial.
Second, Boddie asserts that the prosecutor improperly imputed insincerity toward the defense counsel, characterizing portions of counsel's closing argument as "ink in the water." The courtroom is an adversarial setting, the foundation of which is comparison and criticism of competing arguments. Therefore, it is doubtful that defense counsel was denigrated by this characterization. However, even if improper, counsel has failed to show that he was prejudiced by the remarks. "Not every intemperate remark by counsel can be a basis for reversal."[29]
Reviewing the closing argument in its entirety, we do not find that the alleged misconduct of the prosecution permeated his argument to such an extent as to materially affect a substantial right or deny Boddie a fair trial.[30]
 Jury Composition
Boddie contends that under-representation of African-Americans on the jury venire violated his Sixth Amendment right to be tried by a jury representing a fair cross-section of the community, and his Fourteenth Amendment equal protection guarantees, amounting to a deprivation of his right to a fair trial.
During voir dire selection Boddie objected to the under-representation of African-American individuals in the venire, citing low turnout from a zip code representing a geographical area of Allen County with a high percentage of African-Americans. He contends that this under-representation was the result of the state's failure to guarantee that randomly selected jurors appear. It is alleged that this inaction may be construed as a method for screening particular groups of people from the jury venire.
The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community."[31] In analyzing an alleged Sixth Amendment fair cross-section requirement violation, we employ a three-prong test. The "defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process."[32]
Boddie has not satisfied either the second or third prongs of this test. With respect to the second prong, his undocumented census figures are insufficient evidence to demonstrate under-representation of African-Americans on the venire in relation to their percentage in the community. In addition, no evidence was adduced supporting the proposition that the under-representation was the result of State's failure to force selected juror's to appear. Finally, Boddie's systematic-exclusion claim is based solely on alleged under-representation on his venire. Under-representation on a single venire does not amount to systematic exclusion.[33]
A party may also challenge the selection and composition of the jury on Federal equal protection grounds by "adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases."[34] The challenger must also show that the under-representation occurred over a significant period of time.[35]
Boddie's unsupported assertions do not amount to statistical evidence showing a discrepancy between the percentage of African-Americans in Allen County and the percentage of African Americans on jury venires. Moreover, he failed to show under-representation over a significant period of time, pointing exclusively to his own venire. We therefore find the Fourteenth Amendment equal protection and Sixth Amendment claims are without merit.
Considering the entirety of Boddie's allegations in his fourth and sixth assignments of error within the context of the entire case, we find that their cumulative effect did not so infect the proceedings with unfairness as to make the resulting conviction a denial of due process or violation of his right to a fair trial.
Accordingly, Appellant's fourth and sixth assignments of error are overruled.
 Assignment of Error V The Trial Court Judge abused its discretion by overruling the Motion to Change Venue and the Motion for Individual Voir Dire.
 In his fifth assignment of error, Boddie argues that the trial court erred in two respects in light of surrounding trial publicity, essentially asserting that the he was denied the right to an impartial jury.
First, Boddie asserts that the trial court erred in refusing to schedule a separate hearing to specifically examine pretrial publicity and by refusing to change venue. Second, he contends that the trial court erred by not allowing individual sequestered voir dire of prospective jurors. These arguments will be addressed in turn.
 Change of Venue
Prior to trial, on July 17, 2000, Boddie moved the court for a change of venue asserting that the pretrial publicity had been so pervasive as to prevent the seating of a fair and impartial jury. The trial court took the motion under advisement, postponing its decision until completion of voir dire. After impaneling the jury, the trial court denied the motion without discussion of the merits.
Crim.R. 18(B) and R.C. 2901.12(K) provide that a trial court may transfer a case "when it appears that a fair and impartial trial cannot be held" within the jurisdiction of that court. In Ohio, it is consistently held that a change of venue is necessary where the totality of circumstances indicate that is it likely that the pretrial publicity will prevent the seating of an impartial jury.[36] A change of venue rests largely within the sound discretion of the trial court and should not be disturbed on appeal "unless it is clearly shown that the trial court has abused its discretion."[37]
Under rare circumstances, the amount of adverse publicity can be so pervasive that prejudice to the defendant can be presumed.[38]
However, even extensive, pervasive, adverse publicity does not inevitably lead to an unfair trial.[39] Contrary to Boddie's assertions, a separate venue hearing is not required to apprise the court of the content or extent of media coverage.[40] It is also not necessary that the prospective jurors have no prior knowledge of the case.[41] The mere existence of any preconceived notion as to guilt or innocence, without more, is not sufficient to rebut the presumption of juror impartiality and would establish an impossible standard.[42]
The appropriate standard is whether the publicity was so great that the prospective jurors cannot set aside their prior knowledge and impartially decide the case on its merits.[43] The trial judge sits in the locale where the publicity is said to have its effect and brings to the proceedings his own perception of the depth, extent, and influence of media coverage.[44] "[A] careful and searching voir dire provides the best test of whether prejudicial pretrial publicity has prevented obtaining a fair and impartial jury from the locality."[45] The trial judge sits in the best position to judge each juror's demeanor and fairness.[46]
In support of his argument Boddie cites a May 31, 2000 article in the Lima News. He quotes the Lima News article as stating that "Boddie claimed that he had been asked to be a lookout", asserting that this was incorrect information tantamount to a false confession. Though adverse, the statement alone does not inevitably lead to a presumption of prejudice and must be considered in light of the extensive amount of media exposure and actual effect of the statement upon the prospective jurors.
Boddie also cites, generally, the high level of trial publicity. Other than his bare assertion, the record is devoid of evidence indicating there was an extraordinary amount of publicity in light of the character of the crime. In contrast, in State v. Ludgren, a cult murder was subject to three hundred fifty stories on three local television stations and two hundred and seventy articles in two local newspapers over an eight month period. Despite this, prejudice was not presumed.[47]
Aware of the amount of pretrial publicity and having considered the Lima News article, the trial court determined that proceeding with voir dire presented the best opportunity to examine the influence of pretrial publicity. Although the instant case was covered by multiple newspapers and television stations, our review of the record does not indicate that the pretrial publicity was so massive, inflammatory, pervasive, or adverse as to be presumptively prejudicial. Therefore, the trial court did not abuse its discretion in proceeding with voir dire.
Where the presumption of prejudice does not apply, the existence of prejudice may be established through the voir dire examination of potential jurors. The Ohio Supreme Court has considered the following factors in reviewing a motion for change of venue based upon voir dire examination: (1) the duration of the voir dire process, (2) whether each juror was questioned individually about pretrial publicity, (3) whether the trial court had excused prospective jurors who had formed a fixed opinion regarding the guilt or innocence of the accused based upon pretrial publicity, (4) whether the jurors seated appear to have been exposed to extensive publicity, and (5) whether those jurors who had stated that they had formed tentative opinions had indicated that they would be able to set aside their views and would decide the case solely upon the evidence presented at trial.[48]
In the instant case, the voir dire lasted one and a half days, encompassing approximately 315 pages of the transcript. The trial court conducted, and permitted all parties to conduct, significant individualized questioning of each juror regarding pretrial publicity. Jurors were questioned about the amount and form of media to which they had been exposed, the general content of the media to which they had been exposed, whether they had discussed the case with other individuals, whether they had any preconceived notions, opinions, or prejudice against Boddie, and whether they could set aside what they had read or heard and decide the case solely upon the evidence presented at trial. In addition, jurors were also specifically questioned about what they had read or heard about Boddie. Negative responses to the foregoing questions were clarified with supplemental questioning. When a prospective juror indicated that he or she was unable to set aside an opinion resulting from pretrial publicity, the trial court excused the juror for cause.
Upon reviewing the transcript of the entire voir dire, we conclude that the pretrial publicity in this case was not so adverse or extensive so as to prevent the trial court from impaneling a fair and impartial jury. Boddie has demonstrated no abuse of discretion or prejudice resulting from the trial court's overruling his motion for change of venue.
 Voir Dire
Boddie further contends that the trial court's denial of his motion for individually sequestered voir dire deprived him of an impartial jury.
Crim R. 24(A) and R.C. 2945.27 set forth basic guidelines for the examination of jurors in criminal proceedings. Although the prosecution and defense are to be afforded a reasonable examination of prospective jurors, the trial court reserves the right and responsibility to control the proceedings with an eye towards expeditious and effective ascertainment of the truth in empanelling an impartial jury.[49] There is no general mandate of individual sequestration in criminal proceedings.[50] The manner in which voir dire is conducted lies within the sound discretion of the trial court.[51]
In Mu'Min v. Virginia the United States Supreme Court held that a criminal defendant does not have a constitutional right to specifically question each juror as to the content of media coverage of the case to which they had been exposed.[52] In Mu'Min, news stories appeared over the course of several months and included, in addition to details of the crime itself, numerous items of prejudicial information inadmissible at trial.[53] Mu'Min endorsed "primary reliance on the judgment of the trial court", stating:
 The judge of that court sits in the locale where the publicity is said to have its effect and brings to his evaluation of any such claim his own perception of the depth and extent of news stories that might influence a juror.[54]
 Relevant inquiry is whether the jurors have such opinions that they are unable to impartially judge the guilt of the defendant.[55]
As mentioned previously, our review of the record indicates that the court permitted a full, comprehensive, and individualized voir dire regarding pretrial publicity. Furthermore, though Boddie had the opportunity, he failed to submit any materials to the court with his motion, when the matter was addressed at an August 31, 2000, pre-trial hearing, or any time thereafter. The record reveals no indication that the jurors were less than candid, unduly influenced by media coverage, or incapable of impartiality. Boddie has demonstrated no abuse of discretion or prejudice.
Accordingly, Appellant's fifth assignment of error is overruled.
 Assignment of Error VII The court erred in denying the Defendant's motion for a new trial.
 Boddie asserts in his seventh assignment of error that the trial court improperly denied his motion for a new trial. We do not agree.
 Crim.R. 33(A) states, in pertinent part:
 A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
* * *
 (4) That the verdict is not sustained by sufficient evidence or is contrary to law. * * *
 A trial court's decision to grant or deny a motion for new trial is not reversible upon appeal absent an abuse of discretion.[56] An abuse of discretion exists where the record shows that the court's attitude was unreasonable, arbitrary or unconscionable.[57] The discretionary decision to grant a new trial is an extraordinary measure, and should be used only when the evidence presented weighs heavily in favor of the moving party.[58]
Boddie filed a timely motion for a new trial, setting forth three categories of alleged error: (1) prosecutorial misconduct, (2) abuse of discretion by the court, and (3) irregularity in the proceedings. The trial court overruled this motion.
On appeal, Boddie has supplemented his original arguments, submitting that the verdict was not sustained by sufficient evidence. This argument was not raised in the original motion for a new trial. Therefore, the court need not address the sufficiency of the evidence in this context. The court would note, however, that the sufficiency of the evidence is fully addressed in our review of his eighth assignment of error.
Crim.R. 33(C) mandates that affidavits be submitted in support of any motion alleging prosecutorial misconduct under Crim.R. 33(A)(2). If the defendant fails to produce supporting affidavits, the trial court, in its discretion, may summarily deny the motion.[59] In this case, no affidavits were submitted with the new trial motion in support of Boddie's allegations of prosecutorial misconduct. Under these circumstances, we cannot say the trial court abused its discretion in this regard.
Boddie also cites the trial court's denial of his motions for change of venue and individually sequestered voir dire, the alleged failure to provide speedy trial, and the introduction of phone records. In support of his allegation of irregularity in the proceedings, he cites an alleged ex parte communication between the State and the trial judge. For the reasons discussed in our review of his first, second, fourth, and fifth assignments of error, we find that the trial did not abuse its discretion in overruling Boddie's Crim.R. 33 motion.
Accordingly, Appellant's seventh assignment of error is overruled.
 Assignment of Error VIII The court erred in failing to find pursuant to Defendant's Rule 29 Motion, that after viewing the evidence in the light most favorable to the prosecution, any rational juror could have found the essential elements of a crime beyond a reasonable doubt.
 Boddie argues that there was insufficient evidence to establish that he engaged in complicity to commit arson, robbery, or murder, and that the trial court erred in overruling his Crim.R. 29(A) motion for acquittal.
According to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side has closed, shall order the entry of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offenses. * * *." In reviewing a trial court's decision on a motion for acquittal, this court is bound to apply the following standard of review:
 Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.[60]
 The Bridgeman standard, however, must also be viewed in light of the test for sufficiency of the evidence.[61]
This test has been set forth as:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[62]
 Ohio's complicity statute, R.C. 2923.03, states in pertinent part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense. * * *
 (C) No person shall be convicted of complicity under this section unless an offense is actually committed, but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.
 An individual charged with complicity shall be prosecuted and punished as if that person were a principal offender.[63]
 Pursuant to R.C. 2923.03, this court has held that aiding and abetting contains two basic elements: an act on the part of the defendant contributing to the execution of a crime and the intent to aid in its commission.[64] Additionally, this court has stated that `aid' has been defined as "to assist", and `abet' has been defined as "to incite or encourage."[65]
Both direct and circumstantial evidence may be introduced to establish the aiding and abetting elements of complicity.[66]
Mere presence during the commission of a crime does not necessarily amount to being an accomplice.[67] To be guilty as an aider or abettor pursuant to R.C. 2923.03, the complicitor must possess the same culpable mental state as that required for the principle offense.[68] Although "a principle offender need not necessarily be convicted in order to sustain another's conviction as an aider or abettor, there still must be sufficient evidence that an offense occurred."[69]
Boddie does not challenge the sufficiency of evidence supporting the commission of the principal offenses. Instead, he argues that the evidence is insufficient to establish that he knowingly aided or abetted in the commission of the subject crimes to constitute complicity. We disagree.
The record herein demonstrates the following pertinent evidence. After the theft of the cocaine and cash from Corey Summerhill's apartment, Eddie White, Summerhill, Sam Williams, and Boddie spent the next few days attempting to determine who stole the cocaine and how to get it back. White testified that he and Williams visited Boddie's house on the evening of the fire. While at Boddie's house, Boddie and Williams discussed burning down Bunley's house. White heard Boddie advise Williams to use forty ounce bottles and suggested that he employ Michael Wright to set the fire. Williams solicited Boddie to be a lookout, alerting the men as to when Bunley left the residence and the direction he was traveling. Boddie also provided Williams with rubber gloves he had retrieved from his house that were used in preparing the gasoline firebombs. Boddie confirmed Bunley's presence at the residence before, during, and after the fire. A witness testified that she had seen Boddie observing the fire. After the fire, Boddie delivered payments to Wright and assisted in the concealment of evidence.
Viewing the evidence in a light most favorable to the State, the trial court did not err in denying Boddie's motion for judgment of acquittal. Reasonable minds could have concluded that all the elements of the offenses charged were proven, thus precluding an entry of judgment of acquittal. Testimony on the record from several of his accomplices evidences Boddie's knowing and purposeful participation prior to, during, and after the crimes for which he was charged. The testimony presented at trial, if believed by the trier of fact, is sufficient to support Boddie's convictions.
Accordingly, Appellant's eighth assignment of error is overruled.
 Assignment of Error IX The court erred as a matter of law in denying the Defendant the right to call as a witness a person under subpoena solely because the witness' lawyer said after the trial had begun that his client would plead the Fifth and refuse to testify.
 In his ninth assignment of error, Boddie argues that the trial court erred by refusing to voir dire co-defendant, Sam Williams, regarding his intention to invoke the Fifth Amendment or permitting him to call Williams to the stand, requiring Williams to specifically invoke his Fifth Amendment right against self- incrimination.
The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide an accused with a right of compulsory process to obtain a witness's testimony or evidence.[70]
However, an accused's constitutional right of compulsory process is limited by the rules of evidence.[71] Evid.R. 103(A)(2) requires an offer of proof in order to preserve any error in excluding evidence, unless the substance of the excluded evidence is apparent from the record.[72] An offer of proof generally requires that the party proffer to the court the substance of the desired testimony and how it would have been relevant and material to the defense.[73] An offer of proof is necessary to preserve procedural errors in the invocation of a witnesses' Fifth Amendment privilege.[74]
At the close of the state's case, Boddie's counsel indicated that he intended to call Sam Williams to testify as a defense witness. The trial court noted for the record that it had received a copy of a letter dated September 1, 2000, from Williams' counsel, indicating that Williams would assert his Fifth Amendment rights and would not be testifying under any circumstances. However, the court felt it appropriate to schedule a hearing on the matter since Boddie had issued a subpoena for Williams.
On September 14, 2000, counsel appeared in court on behalf of Williams. He indicated that he had spoken with Williams less than an hour before, advising Williams of his Fifth Amendment rights and discussing what a subpoena was and what it meant. Counsel also indicated that Williams was very much aware of the ongoing trial and who was on trial. He then informed the court that it was Williams' specific intent to rest upon his Fifth Amendment rights and that Williams would refuse to testify if called to the witness stand. The trial court accepted counsel's statements as Williams' personal representations. Based upon those representations and the previous letter, the trial court excluded Williams as a witness without requiring him to take the witness stand.
Boddie failed to proffer to the trial court the substance of Williams proposed testimony or how the testimony would have been relevant or material to his defense. The record discloses only that Boddie had an "indication" from Williams' family members that Williams wanted to testify and that he expected to hear Williams personally invoke theFifth Amendment. Therefore, Boddie effectively waived any error by failing to properly preserve the issue for review.
Accordingly, Appellant's ninth assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
BRYANT and HADLEY, J.J., concur.
[1] R.C. 2945.71(C)(2)
[2] R.C. 2945.71(E)
[3] State v. Butcher (1986), 27 Ohio St.3d 28, 30-31.
[4] Id.
[5] State v. Singer (1977), 50 Ohio St.2d 103, 109.
[6] R.C. 2945.72
[7] State v. Arrizola (1992), 79 Ohio App.3d 72, 75, quoting Committee Comment to H.B. 511
[8] Doggett v. United States (1992), 505 U.S. 647, 652.
[9] Crim.R. 16(E)(3); State v. Scudder (1994), 71 Ohio St.3d 263,268.
[10] State v. Heinsh (1990), 50 Ohio St.3d 231, 236; State v. Terry
(1998), 130 Ohio App.3d 253, 260.
[11] Scudder, 71 Ohio St.3d at 269.
[12] State v. Robb (2000), 88 Ohio St.3d 59, 68.
[13] State v. Pruett (1971), 28 Ohio App.2d 29, 34.
[14] State v. Carter (1995), 72 Ohio St.3d 545, 550.
[15] State v. Joy (1995), 74 Ohio St.3d 178, 181.
[16] State v. Smith (1984), 14 Ohio St.3d 13, 14 (citations omitted).
[17] State v. Keenan (1993), 66 Ohio St.3d 402, 405; State v. Gest
(1995), 108 Ohio App.3d 248, 257.
[18] State v. Durr (1991), 58 Ohio St.3d 86, 94; State v. Maurer
(1984), 15 Ohio St.3d 239, 266.
[19] State v. Treesh (2001), 90 Ohio St.3d 464, 460, citing Smith v.Phillips (1982), 455 U.S. 209, 219.
[20] Royal Indemnity Co. v. J.C. Penny Co. (1986), 27 Ohio St.3d 31,33-36.
[21] State v. Henness (1997), 79 Ohio St.3d 53, 60.
[22] Id.
[23] Black's Law Dictionary (6 Ed. 1990) 576.
[24] State v. Loza (1994), 71 Ohio St.3d 61, 78.
[25] State v. Grant (1993), 67 Ohio St.3d 465, 482; State v.Liberatore (1982), 69 Ohio St.2d 583, 589.
[26] State v. Smith (1997), 80 Ohio St.3d 89, 111.
[27] State v. Moore (1994), 97 Ohio App.3d 137, 143.
[28] State v. Treesh (2001), 90 Ohio St.3d 460, 464; citing State v.Smith (1984), 14 Ohio St.3d 13, 15.
[29] State v. Landrum (1990), 53 Ohio St.3d 107, 112.
[30] State v. Bey (1999), 85 Ohio St.3d 487, 495.
[31] Taylor v. Louisiana (1975), 419 U.S. 522, 527.
[32] State v. Fulton (1991), 57 Ohio St.3d 120, paragraph two of the syllabus, citing Duren v. Missouri (1979), 439 U.S. 357, 364.
[33] State v. McNiell (1998), 83 Ohio St.3d 438, 444, citing Ford v.Seabold (C.A.6, 1988), 841 F.2d 677, 685; Duren, 439 U.S. at 366.
[34] Fulton, 57 Ohio St.3d at 123-124.
[35] McNiell, 83 Ohio St.3d at 444.
[36] State v. Nobles (1995), 106 Ohio App.3d 246, 257.
[37] State v. Lundgren (1995), 73 Ohio St.3d 474, 479, citing State v.Maurer (1984), 15 Ohio St.3d 239, 250.
[38] Lundgren, 73 Ohio St.3d at 479.
[39] Id at 479, citing Nebraska Press Assn. v. Stuart (1976),427 U.S. 539, 554.
[40] State v. Gumm (1995), 73 Ohio St.3d 413, 431.
[41] Irwin v. Dowd (1961), 366 U.S. 717, 722-723; Lundgren,73 Ohio St.3d at 479.
[42] Irwin, 366 U.S. at 722-723.
[43] Id.
[44] Mu'Min v. Virginia (1991), 500 U.S. 415, 424-426.
[45] Lundgren, 73 Ohio St.3d at 479, citing State v. Landrum (1990),53 Ohio St.3d 107, 117.
[46] Lundgren, 73 Ohio St.3d at 480.
[47] Id. at 479.
[48] Lundgren, 73 Ohio St.3d at 479-480; State v. Twyford (Sept. 25, 1998) Jefferson App. No. 93-J-13, unreported.
[49] State v. Durr (1991), 58 Ohio St.3d 86, 89.
[50] State v. Fear (1996), 86 Ohio St.3d 329, 338.
[51] State v. Getsy (1998), 84 Ohio St.3d 180, 190.
[52] Mu'Min v. Virginia (1991), 500 U.S. 415, 424-426.
[53] Mu'Min, 500 U.S. at 427.
[54] Id.
[55] Id. at 430.
[56] State v. Schiebel (1990), 55 Ohio St.3d 71, syllabus.
[57] State v. Montgomery (1991), 61 Ohio St.3d 410, 413.
[58] State v. Otten (1986), 33 Ohio App.3d 339, 340.
[59] State v. Rogers (1990), 68 Ohio App.3d 4, 7; Toledo v. Stuart
(1983), 11 Ohio App.3d 292, 293.
[60] State v. Bridgeman (1978), 55 Ohio St.2d 261.
[61] State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09, unreported.
[62] State v. Jenks, (1991) 61 Ohio St.3d 259, paragraph two of the syllabus.
[63] See R.C. 2923.03(F); State v. Lundgren (1995), 73 Ohio St.3d 474; State v. Pearson (1980), 62 Ohio St.2d 291, 293.
[64] State v. Jacobs (Sept. 30, 1999), Hancock App. No. 5-99-17, unreported, citing State v. Sims (1983), 10 Ohio App.3d 56, 58.
[65] Id.
[66] Jacobs, citing State v. Cartellone (1981), 3 Ohio App.3d 145,150, 444 N.E.2d 68.
[67] Jacobs, citing State v. Widner (1982), 69 Ohio St.2d 267,269.
[68] State v. Mendoza (March 31, 2000), Hancock App. No. 5-99-46, unreported.
[69] State v. Jacobozzi (1983), 6 Ohio St.3d 59, 62; See also State v.Graven (1977), 52 Ohio St.2d 112.
[70] Pennsylvania v. Ritchie (1988), 480 U.S. 39, 56; Columbusv. Cooper (1990), 49 Ohio St.3d 42, 44.
[71] State v. Denis (6 Dist. 1997), 117 Ohio App.3d 442, 446; State v.Haley, (Dec. 2, 1999), Cuyahoga App. No. 74718, unreported.
[72] See State v. Brooks (1989), 44 Ohio St.3d 185, 195; State v.Grubb (1986), 28 Ohio St.3d 199 (paragraph 2 of the syllabus).
[73] Brooks, 44 Ohio St.3d at 195.
[74] State v. Hayley, (Dec. 2, 1999), Cuyahoga App. No. 74718, unreported; Dismissed, appeal not allowed by State v. Hayley (2000),88 Ohio St.3d 1434.