JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Tony Gregory appeals from his conviction for assault pursuant to R.C. 2903.13. He argues that the prosecutor engaged in misconduct and that the trial court considered irrelevant and prejudicial evidence. We find no merit to the appeal and affirm.
 {¶ 2} Gregory was indicted on two counts of felonious assault in violation of R.C. 2903.11. Count one involved an assault of Thomas Culkar and count two involved a victim named Joe Hanna. The matter proceeded to a joint jury trial with two co-defendants, Charles Harrer and James Buffington.
 {¶ 3} The evidence at trial indicated that the charges arose out of an altercation that occurred during the early morning hours on June 25, 2000, at Panini's restaurant located on West Sixth Street in downtown Cleveland. Gregory and the two co-defendants were part of a group that went to Panini's at the end of a bachelor party. Apparently, one member of the group was threatening customers and the restaurant manager.
 {¶ 4} Joe Hanna, co-owner of Panini's, testified that the manager notified him of the problem. When Hanna told the man he had to leave, the man became combative and began swearing at Hanna. Hanna escorted him out the door and a group of males, which included Gregory and the co-defendants, followed. When they got to the door, the man began swearing at Hanna and threatened to "kick his ass." As Hanna was looking at Gregory, who was standing next to the man, the man punched him. According to Hanna, Gregory then jumped on him and punched and kicked him. He was able to later identify Gregory as one his assailants because he observed that Gregory was wearing a conspicuous "Gilligan's hat."
 {¶ 5} When Hanna was able to get up, he saw that his partner, Tom Culkar, was dragged to the middle of the street and was being beaten by a group of men, one of whom was co-defendant Buffington. Hanna attempted to help Culkar, but Gregory, along with several others, began assaulting him again.
 {¶ 6} After about fifteen minutes, the group ran off. Hanna and Culkar were able to subdue one of the assailants, co-defendant Charles Harrer, who had returned looking for a lost watch, and held him until the police arrived. Hanna testified that as a result of the assault he received six stitches to reattach his lip.
 {¶ 7} Thomas Culkar, co-owner of Panini's, testified that he witnessed Hanna being beaten by Gregory. He himself was assaulted by co-defendants Harrer and Buffington. Culkar's tooth was knocked out during the altercation.
 {¶ 8} Jennifer Lombardo, a bartender at the Velvet Dog, which is next to Panini's, witnessed the altercation from a second-floor window. She saw three or four men assaulting Culkar and identified Gregory as the person who assaulted Hanna.
 {¶ 9} Daniel Birt, the general manager of the Velvet Dog, was standing behind Hanna when Hanna was first punched. He then witnessed Gregory jump on Hanna and start punching him. He described Gregory as wearing a fisherman's hat.
 {¶ 10} Officer Norman Nahra testified that he responded to the scene of the altercation at approximately 3:00 a.m. As he was questioning witnesses, Gregory and Buffington returned to the scene. They were no longing wearing their shirts and Gregory was no longer wearing a hat. Hanna and Culkar pointed out the men to the police. Gregory initially denied any involvement in the fight, but when questioned why he and Buffington were not wearing shirts, Gregory responded that Hanna and Culkar had started the fight.
 {¶ 11} The officer stated that Gregory and Buffington smelled of alcohol and were acting "antsy" and uncooperative. When Gregory began raising his voice, the officer placed him and Buffington in the back of the squad car. Before doing so, he patted them down for weapons and found a cigarette package in Gregory's pocket containing a pipe with marijuana residue.
 {¶ 12} Co-defendant Charles Harrer denied taking part in the fight. He claimed that when he returned to the scene to look for a friend's watch, Hanna and Culkar restrained him and assaulted him. Harrer also testified that he did not recall Gregory wearing a hat that night.
 {¶ 13} Robert Becker, a bystander who witnessed the fight, corroborated Harrer's story that he was held down and assaulted by Culkar and Hanna. He did not know if Gregory was involved in the fight because after Hanna received the first punch, Becker's attention was on other fights that were occurring.
 {¶ 14} Based on the evidence, the jury found Gregory not guilty of count one, assaulting Tom Culkar. Regarding count two, the jury found Gregory not guilty of felonious assault of Joe Hanna, but found him guilty of the lesser included offense of assault, a misdemeanor pursuant to R.C. 2903.13. The trial court sentenced Gregory to one year of probation. Gregory appeals and sets forth two assignments of error.
 I. {¶ 15} THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT AT TRIAL WHICH SUBSTANTIALLY PREJUDICED AND MISLED THE JURY.
 {¶ 16} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402, 405; State v.Gest (1995), 108 Ohio App.3d 248, 257. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips
(1982), 455 U.S. 209. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991),58 Ohio St.3d 86, 94; State v. Maurer (1984), 15 Ohio App.3d 239, 266.
 {¶ 17} The prosecutor's comments that Gregory alleges were improper occurred during closing argument. A prosecutor is afforded wide latitude in closing arguments. State v. Benge (1996), 75 Ohio St.3d 136, and it is within the trial court's sound discretion to determine whether a comment has gone too far.
 {¶ 18} We also note that no objection was made to any of the comments that Gregory contends were improper. We therefore need not consider any error unless it is plain error. Crim.R. 52(B), State v.Coleman (1989), 45 Ohio St.3d 298, 301. Plain error means that but for the existence of the error, the result of the trial would have been otherwise. State v. Wiles (1991), 59 Ohio St.3d 71, 86.
 {¶ 19} We do not find any of the prosecutor's comments, even if they were found to be improper, affected the outcome of the trial. Several witnesses had identified Gregory as Hanna's assailant. Officer Nahra also testified that Gregory reluctantly admitted to being involved in the fight but claimed the victims started it. Therefore, the prosecutor's comments as to being "stunned" at counsel's questioning Hanna about his drug use, describing defense counsel's tactics as "desperate" and attacking counsel's "bouncer's protocol" theory hardly can be said to have influenced the outcome of the trial.
 {¶ 20} The prosecutor's comment that as a prosecutor he does "justice" obviously had no effect on the jury because they found Gregory not guilty of the assault of Culkar and guilty of the less serious offense of misdemeanor assault of Hanna.
 {¶ 21} Nor do we find the prosecutor's comment that the State did not call Becker to testify because of his unavailability, when in fact he was available, to have influenced the outcome of Gregory's trial. Becker's testimony went to Harrer's culpability and not Gregory's. When questioned whether Gregory participated in the fight, he responded that he did not know and that he did not recall. However, he also stated that he did not know what happened to Hanna after the first punch because his attention was not on him, but on other fights that broke out. (Tr. 1149). Therefore, his testimony was not relevant to Gregory's defense.
 {¶ 22} Gregory's first assignment of error is overruled.
 II. {¶ 23} THE TRIAL COURT ERRED IN ALLOWING THE JURY TO HEAR ABOUT MR. GREGORY'S POSSESSION OF DRUG PARAPHERNALIA ON THE NIGHT IN QUESTION.
 {¶ 24} Gregory contends evidence that a pipe with marijuana residue was found on his person was both prejudicial and irrelevant.
 {¶ 25} Evid.R. 404(B) reads as follows:
 {¶ 26} (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 27} The admissibility of "other acts" evidence is within the sound discretion of the trial court. State v. Matthews (1992),80 Ohio App.3d 409, 415. In State v. Roe (1989), 41 Ohio St.3d 18,23-24, the Ohio Supreme Court, relying on State v. Wilkinson (1980),64 Ohio St.2d 308, 317, stated that:
 {¶ 28} "[E]vidence of other crimes may be presented when `they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged,'" quoting United States v. Turner
(C.A. 7, 1970), 423 F.2d 481, 482-484. See, also, State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of syllabus.
 {¶ 29} In the instant case, the fact that Gregory may have used marijuana could explain why Gregory behaved so aggressively that night. Officer Nahra also indicated that Gregory was acting "antsy" and "uncooperative" while being questioned. The fact that Gregory may have been smoking marijuana may explain this behavior.
{¶ 30} Furthermore, even if this evidence was improperly admitted, it cannot be said that Gregory's possession of a pipe with marijuana residue affected the outcome of the trial. As stated above, several witnesses identified Gregory as Hanna's assailant and Gregory himself admitted to Officer Nahra that he engaged in the fight, but blamed it on the victims.
 {¶ 31} Gregory's second assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P.J. and DIANE KARPINSKI, J. CONCUR