JOURNAL ENTRY and OPINION
{¶ 1} Appellant Edward Panza appeals his conviction for felonious assault, which the trial court entered after a jury trial. Panza agrees there is sufficient evidence to support his conviction, but claims prosecutorial misconduct during closing argument and the trial court's failure to give appropriate jury instructions deprived him of a fair trial. He also argues his post-release control should be vacated because the trial court failed to fully advise him at the sentencing hearing regarding the control. Panza assigns the following four errors for our review:
 {¶ 2} "I. The prosecution violated Mr. Panza's constitutional rights under Article I, Section 10 of the Ohio Constitution, theFifth Amendment to the United States Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument."
 {¶ 3} "II. Mr. Panza was denied his rights to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendment to the United States Constitution."
 {¶ 4} "III. The trial court plainly erred when it failed to instruct the jury on the lesser included offense of assault in violation of R.C. 2903.13(B), defense of others, and aggravated assault."
 {¶ 5} "IV. The post-release control term included in the sentence must be vacated because the trial court failed to fully advise Mr. Panza about post-release control at sentencing."
 {¶ 6} Having reviewed the record and the pertinent facts, we affirm Panza's conviction. The apposite facts follow.
 {¶ 7} Panza, along with his co-defendants, Michael Kaylor and Edward Farrell, were each indicted on one count of felonious assault and one count of aggravated robbery. A joint trial ensued.
 {¶ 8} Herman Gaither testified that on November 11, 2002 at around 11:30 p.m., he went to visit Jacqueline Bell at her apartment, located at West 110th and Lorain. As he walked to the apartment building entrance, Edward Farrell approached him and said, "What's up with you?" Gaither replied, "Well, what's up with you?" Farrell then punched him in the face, and two men behind Gaither joined in the scuffle, punching and kicking Gaither. The struggle continued to the front of a barbershop, which contained a large front window. The area was well lit. Gaither recognized Kaylor and Panza, whom he had seen at a party given by Bell several months earlier.
 {¶ 9} According to Gaither, the three men pushed him through the barbershop window. As a result, Gaither's wrist was cut. The men ran off. Gaither told Bell to find the officer down the street, who had ticketed him moments before for speeding. After observing Gaither's injury, the officer called EMS.
 {¶ 10} Gaither was transported to Fairview Hospital, where he received stitches for his wrist. He underwent surgery several days later to reattach his tendons. As a result of his injury, Gaither is unable to return to active status with the military.
 {¶ 11} Jacqueline Bell corroborated Gaither's testimony. She testified she saw her neighbors Panza, Kaylor, and Farrell, drinking in the bar located below the apartment building. She observed one of the men come out of the bar and then go back in. As Gaither pulled up in his car and walked towards the apartment side entrance, she saw Farrell approach and punch Gaither. Panza and Kaylor then joined in the beating. Bell saw Farrell pick up Gaither by his shirt collar, then all three men pushed Gaither through the window.
 {¶ 12} Bell's sister, Amanda Goddard, testified on behalf of codefendant Farrell. According to Goddard, on the night of the incident, she and her sister were arguing because she was tired of watching Bell's children while Bell went out with Gaither. When she went outside after Bell, she saw Bell and Gaither arguing with Panza, Farrell, and Kaylor. Goddard claimed that Gaither pulled out a gun. She ran back to her apartment and soon after heard a loud crash.
 {¶ 13} Farrell's daughter, Missi Lynne Farrell, also testified on his behalf. She picked up her father from her mother's house the night of the incident to take him home. She stated her father was in pain due to kidney stones. When she and Farrell walked outside the building, they observed Bell and Gaither engaging in what looked like a drug deal. Her father yelled at them to take their business elsewhere. Gaither responded by pulling out a gun. Farrell said her father attempted to wrestle the gun out of Gaither's hand, causing Gaither's wrist and gun to strike the window, breaking it. The Farrells ran to the daughter's car and were followed by Panza and Kaylor. Missi Lynne Farrell admitted they did not report the incident to police.
 {¶ 14} The jury found all three defendants guilty of felonious assault and not guilty of aggravated robbery. Panza appeals.
 {¶ 15} Panza argues in his first assigned error that the prosecutor engaged in misconduct during closing argument.
 {¶ 16} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial.[1] The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.[2] The effect of the prosecutor's misconduct must be considered in light of the whole trial.[3] A prosecutor is afforded wide latitude during closing argument; it is within the trial court's sound discretion to determine whether a comment has gone too far.[4]
 {¶ 17} The first claimed instance of misconduct occurred during the State's rebuttal argument and referenced a remark made by defense counsel to the effect that the state failed to present medical records of Gaither's claimed subsequent medical care. The prosecuting attorney explained the medical records were not presented because she failed to request them during discovery. In this instance, defense counsel invited comment and cannot now complain about inappropriate rebuttal.[5] An otherwise inappropriate comment by a prosecutor in rebuttal argument may be proper where it is an "invited response" to defense counsel's summation.[6]
 {¶ 18} Moreover, we find the prosecutor's comment, even if improper, was not prejudicial. There was sufficient evidence presented to prove the element of serious physical harm without the evidence of follow-up treatment. Gaither testified to receiving stitches, undergoing surgery, and being unable to return to active status with the military.
 {¶ 19} Panza also contends the prosecutor attacked defense counsel's manner of cross-examining Bell. Defense counsel failed to object to these statements at trial; Panza has, therefore, waived all but plain error.[7] Plain error is to be invoked "only to prevent a manifest miscarriage of justice."[8]
Reviewing the matter for plain error, we conclude, even assuming that these comments were improper, they did not determine the outcome of Panza's trial.[9] The prosecutor's remarks concerned defense counsel's inquiry of Bell on cross-examination that suggested Bell's lifestyle was at issue. Panza's right to a fair trial was not impaired when the challenged remarks, viewed in context, constituted permissible comment on matters in evidence.[10]
 {¶ 20} Panza also contends the prosecutor engaged in misconduct by stating that she did not believe the defendants' witnesses. Defense counsel failed to object to this comment; however, under the plain error review, we conclude the comment was not prejudicial. The statement was made after the prosecutor compared the witnesses's testimony with that of the victim. A prosecutor is permitted to make a fair comment about a witness's credibility based upon his testimony, provided that the prosecutor does not invite the jury to go beyond the evidence presented in court.[11] Accordingly, Panza's first assigned error is overruled.
 {¶ 21} Panza argues in his second assigned error that his counsel was ineffective for failing to object to the prosecutor's comments during closing argument, failure to request jury instructions on the lesser-included offenses of assault and aggravated assault, and failure to request an instruction on defense of others. In his third assigned error, he contends counsel's failure to request the instructions or object to the prosecutor's misconduct during closing argument constituted plain error. We will address these two assigned errors together.
 {¶ 22} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington.[12] Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[13] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[14] Judicial scrutiny of a lawyer's performance must be highly deferential.[15]
 {¶ 23} Regarding counsel's failure to object to the prosecutor's comments made during closing argument, we have already concluded the comments did not constitute plain error; therefore, Panza was not prejudiced by counsel's failure to object.
 {¶ 24} We also conclude counsel was not ineffective for failing to request instructions on the lesser-included offenses of aggravated assault and assault. A reviewing court must adopt a deferential attitude to the strategic and tactical choices counsel made as part of a trial strategy.[16] In Griffie,
the Ohio Supreme Court held "failure to request jury instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."[17]
At trial, Panza's counsel was pursuing the defense that Panza did not push Gaither and, in fact, argued in his motion for acquittal, that Panza was not involved in the altercation; therefore, counsel was going for an all-or-nothing approach. Counsel's failure to request a jury instruction as to the lesser-included offenses was a tactical decision, and, thus, did not render his assistance ineffective.
 {¶ 25} Likewise, we find counsel's failure to request a defense of others instruction did not constitute ineffective assistance of counsel. This was a joint trial with three defense attorneys engaging in different trial tactics. Farrell's daughter testified that Farrell attempted to gain control of Gaither's gun. However, Panza was not identified as taking part in this attempt to get the gun. Instead, Panza's attorney argued that Panza was not involved in the altercation. Therefore, a defense of others instruction would not have been appropriate. Accordingly, Panza's second and third assigned errors are overruled.
 {¶ 26} Panza argues in his fourth assigned error that the trial court failed to fully advise him concerning post-release control. Panza's counsel clarified at oral argument that the trial court failed to advise Panza regarding the fact that the post-release control is tolled while he is in prison and failed to advise him of the possible nonprison sanctions that could be imposed if he violated the conditions of release.
 {¶ 27} The trial court advised Panza, "Mr. Panza, this was a felony of the second degree. I have to advise you that when you get out, you could get out on post-release for three years afterwards. What that means to you, during that period, after you are released from prison, if you should violate the conditions set forth by the Adult Parole Authorities, they can send you back to do additional time, equal to one-half of the time I imposed here. Do you understand?"[18] Panza responded, "Yes, your honor."[19]
 {¶ 28} R.C. 2929.13(B)(3) details what the trial court must advise the defendant regarding post-release control. According to this provision, the trial court need only advise that post-release control is part of the defendant's sentence and notify the defendant if they violate the terms of release, they could receive up to one-half of the stated prison term originally imposed. The trial court fully complied with these requirements.
 {¶ 29} R.C. 2943.032(E), which governs guilty pleas, additionally requires the trial court to advise the defendant of possible nonprison sanctions. Panza also relies on this court's decision in State v. Morrisey[20] in support of his argument that the trial court must advise the defendant of nonprison sanctions. The instant case does not involve a guilty plea; thus, we do not conclude the trial court erred by failing to advise the defendant regarding those type of sanctions. Accordingly, Panza's fourth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., J., concur; Karpinski, J., concurs in judgmentonly.
[1] State v. Keenan (1993), 66 Ohio St.3d 402, 405; State v.Gest (1995), 108 Ohio App.3d 248, 257.
[2] Smith v. Phillips (1982), 455 U.S. 209.
[3] State v. Durr (1991), 58 Ohio St.3d 86, 94; State v.Maurer (1984), 15 Ohio App.3d 239, 266.
[4] State v. Benge (1996), 75 Ohio St.3d 136.
[5] State v. Kelly, Cuyahoga App. No. 79499, 2002-Ohio-972;State v. Lamb, 12th Dist. Nos. CA2002-07-171, CA2002-08-192, 2003-Ohio-3870; State v. Kelly, 1st Dist. No. C-010639, 2002-Ohio-6246.
[6] See State v. Brown (1988), 38 Ohio St.3d 305, 316-317.
[7] State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190; Statev. Slagle (1992), 65 Ohio St.3d 597, 604; State v. Underwood
(1983), 3 Ohio St.3d 12, 13.
[8] State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
[9] State v. Smith (1984), 14 Ohio St.3d 13, 14.
[10] See State v. Clark (Aug. 5, 1992), 1st Dist. No. C-910541; State v. Watson (Nov. 16, 1988), 1st Dist. No. C-870562; State v. Hicks (Nov. 14, 1984), 1st Dist. No. C-840114.
[11] See State v. Mundy (1994), 99 Ohio App.3d 275, 304, citing State v. Price (1979), 60 Ohio St.2d 136, 140.
[12] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[13] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[14] Id. at paragraph two of syllabus.
[15] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[16] State v. Griffie (1996), 74 Ohio St.3d 332,1996-Ohio-71.
[17] Id.
[18] Tr. at 653.
[19] Tr. at 653.
[20] (Dec. 19, 2000), Cuyahoga App. No. 77179.