[Cite as *State v. Basford*, 2017-Ohio-8565.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MARK BASFORD | : | Case No. 16 CAA 10 0047 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County
                             Court of Common Pleas, Case No.
                             16 CR I 03 0153

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 14, 2017

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CAROL HAMILTON O'BRIEN                    APRIL F. CAMPBELL
Prosecuting Attorney                      Campbell Law, LLC
                                          545 Metro Place South, Ste 100
By: ANDREW M. BIGLER                      Dublin, Ohio 43017
Assistant Prosecuting Attorney
140 North Sandusky Street, Third Floor
Delaware, Ohio 43015

*Baldwin, J.*

**{¶1}** Defendant-appellant Mark E. Basford, Jr. appeals his conviction entered in the Delaware County Common Pleas Court on one count each of breaking and entering, theft, possessing criminal tools and criminal damaging, following a jury trial.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

**{¶3}** The relevant facts are as follows:

**{¶4}** On January 19, 2016, two men broke into Aspen Ski and Board. The burglary was captured on video and showed two men getting out of a Chevrolet Malibu in the Aspen Ski and Board parking lot, throwing a stone and brick through the door of the business and stealing property from inside. The vehicle was identified as belonging to Callista King.

**{¶5}** At trial, Detectives explained that they located Ms. King's vehicle and discovered Alpine Ski and Board property in the trunk and back seat still bearing Aspen Ski and Board tags. The Detectives discovered a loan application in Ms. King's vehicle that had been completed shortly before the crime, and that document contained the Appellant's name, identified him as Ms. King's boyfriend and included a cellphone number linked to Appellant. Detective Rusty Yates testified he met with Appellant and noted that Appellant and one of the suspects in the video wore the same type of unique shoe. Photographs of the Appellant's shoes were obtained by the Detective and admitted at trial. Testimony provided by a representative of a cellphone company established that the Appellant's cellphone number was used from a location near the scene of the break-

in on the date and near the time of the crime. The same cellphone was used shortly after the crime, a distance from the crime scene and closer to the location where Ms. King's car was found by the Detectives.

{¶6} On March 23, 2016, Appellant was indicted on Count One (1): Breaking and Entering, in violation of R.C. §2911.13(A), a Fifth Degree Felony; Count Two (2): Theft, in violation of R.C. §2913.02(A)(1), a Fifth Degree Felony; Count Three (3): Possessing Criminal Tools, in violation of R.C. §2923.24(A), a Fifth Degree Felony; and Count Four (4): Criminal Damaging, in violation of R.C. §2909.06(A)(1), a Second Degree Misdemeanor. Appellant was indicted along with two Co-Defendants, Callista King and Jason S. Manley.

{¶7} Appellant was offered the option to enter a guilty plea to Counts One and Two, pay restitution of $4,492.62, waive his right of appeal and receive a recommendation for a sentence of eight months in prison to be served concurrently with his current prison sentence, if he would agree to testify truthfully against the remaining defendants. He summarily dismissed that offer, electing to proceed to trial.

{¶8} Appellant proceeded to a jury trial on July 28, 2016.

{¶9} At trial, the State presented the testimony of Detective Chadwick Sloan, Hannah Rice, Gil Harris, Stacey Kapella, and Detective Rusty Yates. Surveillance video of the break-in and a video from the security cameras at a local service station were played for the jury and accepted into evidence. Counsel for Defendant-Appellant called Callista King outside the presence of the jury, in anticipation of her asserting her Fifth

Amendment Right against Self-Incrimination. Ms. King did assert that right and she did not testify before the jury. Appellant offered no additional evidence.

{¶10} The jury trial concluded on August 1, 2016. Following deliberations, the jury found Appellant guilty on all four counts as charged.

{¶11} On October 5, 2016, the matter proceeded to sentencing. The Trial Court sentenced Appellant to a twelve month prison term on Count One finding that the remaining convictions merged with that Count. The Court imposed seven hundred fifty days of additional prison time after finding that Appellant violated the terms of post-release control supervision.

{¶12} Appellant now appeals his conviction, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶13} I. THE PROSECUTOR'S COMMENT IN OPENING ON BASFORD'S DECISION TO REFUSE TO TALK TO THE DETECTIVE, AND ON BASFORD'S FACEBOOK ACTIVITY WHEN SUCH ACTIVITY WAS INADMISSIBLE, WAS PREJUDICIAL ERROR.

{¶14} II. THE STATE LACKED SUFFICIENT EVIDENCE TO CONVICT BASFORD, AND THE EVIDENCE WEIGHT MANIFESTLY AGAINST CONVICTING BASFORD.

{¶15} III. BASFORD'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO SUBSTANTIVE INADMISSIBLE HEARSAY, FOR FAILING TO OBJECT TO

THE PROSECUTOR'S COMMENT IN OPENING AND FOR FAILING TO RENEW HIS

CRIM.R. 29 MOTION, WHICH PREJUDICED BASFORD, REQUIRING REVERSAL.

I.

{¶16} In his First Assignment of Error, Appellant argues the Prosecutor's comment in his opening statement regarding Basford's decision to refuse to talk to the detective, and on Basford's Facebook activity when such activity was inadmissible, was prejudicial error.

{¶17} The Prosecutor's comments were limited to his opening statement to the jury describing the process of the investigation and were not the subject of any objection. The statements were as follows:

> So we're still trying to catch up with Mr. Manley and Mr. Basford, we haven't had a chance to talk with them yet. We had a chance - - the detectives will tell you they had a chance to catch up with Mr. Basford, he didn't want to speak but they took a photograph of his shoes and they look a lot like shoes that were worn by one of the suspects in the Aspen Video. (T. 38, ll.5-11)

> ...

> So the detectives go back to Facebook. They now have both Miss Callista, Miss King as a person of interest in the case as well as Mr. Basford. And they're perusing Mr. Basford's friend's list, Detective Yates was looking through all of his contacts and here's a person that looks an awful lot like

the person in the Aspen Ski video, that person is the third Defendant named

Jason Manley (T. 36, ll. 16-32)

**{¶18}** Because there was no objection, we must analyze this assignment as an assertion of plain error. Crim. R. 52(B) provides: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. *State v. Hill*, 92 Ohio St.3d 191, 200, 749 N.E.2d 274, 283 (2001) (observing that the "first condition to be met in noticing plain error is that there must be error"), citing *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), (interpreting Crim.R. 52[B]'s identical federal counterpart, Fed.R.Crim.P. 52[b] ). Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. *State v. Sanders*, 92 Ohio St.3d 245, 257, 750 N.E.2d 90, 111, (2001), citing *State v. Keith*, 79 Ohio St.3d 514, 518, 684 N.E.2d 47 (1997); see, also, Olano, 507 U.S. at 734 (a plain error under Fed.R. Crim.P. 52[b] is " 'clear' or, equivalently, 'obvious' " under current law). Third, the error must have affected "substantial rights." The Supreme Court has interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. See, e.g., *Hill*, 92 Ohio St.3d at 205, 749 N.E.2d at 286; *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894(1990); *State v. Long,* 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804(1978), paragraph two of the syllabus.

**{¶19}** Even if a forfeited error satisfies these three prongs, Crim.R. 52(B) does not demand an appellate court correct it. Crim.R. 52(B) states only that a reviewing court

"may" notice plain forfeited errors; a court is not obliged to correct them. The Supreme Court of Ohio has acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; see, also, *Olano*, 507 U.S. at 736, 113 S.Ct. at 1779, 123 L.Ed.2d at 521 (suggesting that appellate courts correct a plain error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,' " quoting United *States v. Atkinson* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

**{¶20}** We decline to find plain error here because allowance of the statements, even if considered an error, did not seriously affect the fairness, integrity or public reputation of judicial proceedings, did not have an effect on the outcome of the trial and there was not a manifest miscarriage of justice.

**{¶21}** Appellant's first assignment of error is overruled.

II.

**{¶22}** In his Second Assignment of Error, Appellant argues that his conviction was against the manifest weight and sufficiency of the evidence. He does not contend that the crimes did not occur or that Ms. Kings vehicle was not used, but that there was insufficient evidence to link him to the break-in.

**{¶23}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses,

and determines whether in resolving conflicts in evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541(1997), quoting *State* v. *Martin,* 20 Ohio App.3d 172,175, 485 N.E.2d 717 (1st Dist.1983).

**{¶24}** An appellate court's function when reviewing the sufficiency of the evidence Is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶25}** The Appellee's proof in this case consists of both direct and circumstantial evidence.    The elements of an offense may be established by direct evidence, circumstantial evidence, or both. *State v. Durr*, 58 Ohio St.3d 86, 92, 568 N.E.2d 674 (1991). Circumstantial evidence is defined as "[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought proved. * * *." *State v. Nicely*, 39 Ohio St.3d 147, 150, 529 N.E.2d 1236 (1988), quoting Black's Law Dictionary (5th Ed.1979) 221. Circumstantial and direct evidence are of equal evidentiary value. *State v. Jenks*, *supra* at 272.

**{¶26}** Appellant claims the record lacks sufficient evidence to establish beyond a reasonable doubt that he was the person who committed the offense. Appellee provided evidence showing that Appellant fit the general description of the person who committed the offense.    The vehicle used in the offense was in the possession and control of

Appellant's girlfriend, Callista King, who was present during the commission of the offense.  The investigating officers discovered an invoice for the servicing of the vehicle with a date and time shortly before the incident.  A witness from the company providing the service confirmed he saw three people in that vehicle on the date of the break in shortly before the offense occurred. He provided a description of two male occupants of the car that could reasonably be interpreted as including the Appellant. When the car was located, the investigating offices found items from Alpine Ski and Board in the trunk and back seat with the price tags still attached.  They also found a loan application completed by Callista King in which Appellant is listed as her credit reference and boyfriend.  That application also provided a phone number for Appellant.

{¶27} The State acquired cell phone company records and presented testimony to show that the cell phone number listed by Callista King as belonging to Appellant was used on the date of the incident first  very near the location of the incident and then closer to where Ms. King's car was found with the stolen property inside the vehicle.

{¶28} The detectives discovered that Appellee wearing a distinctive type of athletic shoe, Nike Shox, the same type of shoe worn by the suspects that could be seen in the surveillance video from the scene of the incident and at the service station. The Detectives also found the found Appellant's cell phone number on a co-defendant's phone.

{¶29} The State acquired the surveillance video from the Alpine Ski and Board store that contained images of the vehicle and the men who committed the offense.  The State also obtained a surveillance video from a local service station of the same vehicle,

taken less than two hours prior to the break in.  Both videos show three individuals in the vehicle, including the two men who committed the offense.

**{¶30}** Upon review, we find that the State presented sufficient evidence that Appellant was the person who committed the offenses. The evidence outlined above as well as the surveillance videos provide sufficient basis for the jury to find beyond a reasonable doubt that Appellant was one of the persons who committed the crime.

**{¶31}** The jury was able to view the surveillance videos, look at Appellant and determine for itself whether Appellant was one of the men shown in the videos stealing from the store. The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State* v. *McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, ¶10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP-739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *id.* Our review of the entire record reveals no significant inconsistencies or other conflicts in appellee's evidence that would demonstrate a lack of credibility of Appellee's witnesses.

**{¶32}** Based upon the evidence presented at trial, Appellant's convictions were not against the manifest weight nor based upon insufficient evidence.

**{¶33}** Appellant's Second Assignment of Error is overruled.

III.

{¶34} In his Third Assignment of Error, Appellant claims that he was denied the effective assistance of counsel.

{¶35} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that that counsel acted incompetently. *See, Strickland v. Washington, 466* U.S. 668,104S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana,* 350 U.S. 91,101, 76 S.Ct. 158(1955).

{¶36} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶37} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra* at 694.

{¶38} Appellant first argues that his counsel was ineffective for failure to object to the prosecutor's comments during opening statement and for failure to object to the detective's testimony regarding his use of Facebook during his investigation. As we have

determined that the comments made during opening statement were not plain error, that portion of this assignment is overruled.

**{¶39}** Appellant further contends that trial counsel was ineffective because testimony regarding Facebook evidence was a "singular link to a co-defendant, and was used to connect Basford to the crimes alleged." The Appellant suggests that the testimony was "replete with substantive inadmissible hearsay" and the outcome of the case was dependent on that testimony.

**{¶40}** The testimony at trial was not replete with substantive hearsay and the Facebook evidence was not used to establish Appellant's connection with the crime. On the contrary, the record contains significant evidence, if believed, of Appellant's connection to the offenses in the absence of the Facebook evidence. Appellant's name and current phone number appeared on a loan application found in the vehicle used to commit the offenses. That same document disclosed that Appellant was the boyfriend of the owner of the vehicle, co-defendant, Callista King. The evidence connecting Appellant to the offense was sufficient to support the jury's decision, hence we cannot find that the result of the proceeding would have been different had the Facebook evidence been excluded.

**{¶41}** Appellant also argues that his counsel was ineffective in failing to raise a Crim.R. 29 motion for acquittal at the close of the State's case.

**{¶42}** As we have resolved Appellant's contention his conviction was not supported by sufficient evidence and against the manifest weight of the evidence,

Appellant cannot demonstrate the outcome of the proceeding would have been different had his counsel made a motion for acquittal.

**{¶43}** We find no reasonable probability the outcome of the trial would have been different had such motion been raised. *See, State v. Graber,* 5th Dist. Stark No. 2002CA00014, 2003 WL 27376939 *9;  appeal not allowed, 101 Ohio St.3d 1466, 2004-Ohio-819

**{¶44}** Appellant's Third Assignment of Error is overruled.

**{¶45}** For the foregoing reasons, the judgment of the Court of Common Pleas, Delaware County, Ohio, is affirmed.

**{¶46}** Costs assessed to Appellant.


By: Baldwin, J.

Gwin, P.J. and

John Wise, J. concur.